Thomas Hutchins *vs.* Thomas Hope.—*December*, 1841.

If the answer swears away or denies the equity stated in the bill, the injunction granted on the bill will be dissolved; but if the equity be admitted or is not denied, or if new matter is set up in the answer by way of avoidance of any material allegation in the bill, the injunction will be continued until the final hearing or further order.

An answer alone will not support a distinct fact set up in it by way of avoidance, and upon the motion to dissolve an injunction is not considered as established.   Such a defence must be made out by proof.

The plea of limitations in an answer is not a sufficient ground for a dissolution of an injunction on motion.

Upon an appeal from the continuing of an injunction, the order being affirmed, the cause is remanded for further proceedings.

APPEAL from the Court of Chancery, and from a refusal to dissolve an injunction upon motion.

The appellee in this case, on the 1st March, 1836, filed his bill on the equity side of *Harford* county court, praying an injunction and subpœna against the appellant.

The bill alledged, that about the year 1815, the late *Thomas Hope* departed this life, leaving a considerable real and personal estate, and that the deceased made his last will, which has been admitted to probat, by the Orphans' court of said county, by which he devised and bequeathed among other things, one-third of his personal property, after payment of debts and legacies, to his widow *Hannah Hope*, the mother of your orator; and bequeathed to three of his daughters the sum of $600 each, and the residue to your orator, and made your orator his executor; all which will more fully appear by reference to a copy of said will herewith exhibited as part of this bill, and marked exhibit A; that your orator obtained letters testamentary from said orphans court on said will, and being residuary legatee, gave bond for the payment of debts and legacies; that the said *Hannah*, the mother of your orator, being devisee for life under the will aforesaid, of one-third of the farm which was devised to your orator, continued to reside with him after the death of his father, and he cultivated the entire farm under an agreement to allow her a reasonable rent; that sometime after the death of your orator's father, the said *Hannah* was anxious to have her share of the personal estate devised to her, and she and your orator agreed that the whole should be valued, and that articles of property at such valuation should be delivered to her, and in pursuance of this agreement, two gentlemen of the neighbourhood, to wit, *Abel Alderson* and *William Nelson* were selected, and they valued the entire personal estate left by the father of your orator, at the sum of $3,306.04½; and the mother of your orator being

anxious and desirous to have four of the negroes, two of the cows, and a horse, your orator delivered the same to her, although the aggregate value of said articles so delivered, according to the valuation set upon them by the gentlemen aforesaid, and according to their real and fair value, was equal to one-third of the whole personal estate left by the said *Thomas*, deceased, without any deduction for the legacies left to his said daughters, by which the said *Hannah* was over paid her legacy under said will, $600, without making any deduction for funeral expenses, debts, or the expenses of the administration; *that at the time this was done, and the said Hannah was so over paid, it was done through inadvertence and mistake by your orator, and your orator is satisfied that the said Hannah was not conscious that she was over paid,* she being at the time an old and infirm woman, and as your orator believes, incapable of adding together the value of the articles she received, or knowing what proportion the amount bore to the value of the whole property.    So matters remained, and the mother of your orator continuing to reside with him for several years, when she demanded payment of your orator for the rent of her portion of the farm.    When she made the demand of rent, your orator was fully conscious that he did not owe her anything without reference to the claim arising from over paying her legacy, but the trouble and expense to which your orator had been subjected in keeping her, and her negroes and stock, was more than equivalent to the use and rent of her interest in the land.    The mother of your orator, however, being as before stated, very far advanced in age, and very infirm in body and mind, and being peevish and fretful and incapable of understanding her rights, your orator, in mere indulgence to her caprices, to sooth and comfort her, gave her his three several bills obligatory, two for one hundred and sixty dollars each, and one for two hundred dollars, payable one year after the death of the said *Hannah*, without interest, which said bills obligatory all bear date on the 12th of August, 1822; and your orator expressly charges, that when he gave the said notes, his motives were solely to pacify and quiet his aged

and infirm parent, and not from any consciousness of his indebtedness; and he felt assured too, that the debt would be extinguished by boarding and keeping his mother, her negroes, and stock, for the residue of her life, and with that view he made the notes payable after her death; this arrangement satisfied and quieted the old lady at that time, and as your orator knew it was his sacred duty to take care of and keep his mother, whether she had his notes or not, and as he always intended that she should want no aid or comfort which he could give, he felt little or no concern about the matter. Your orator further shews, that his mother continued to live with him, sometimes as one of his family, and sometimes keeping a separate establishment in part of his house as suited her therein for the time, and sometimes keeping thereon four cows and several negroes, all of which was kept and supplied by your orator from the time the said notes were given up to the death of said *Hannah,* which occurred about the 12th February, 1833; that during the period from the date of said notes or bills *till the death of* said *Hannah,* your orator paid her taxes, and the various items of charge against the said *Hannah* for boarding herself, paying her taxes, and keeping her servants and stock, as will more fully appear by a particular account thereof herewith shewn as part of this bill, and marked exhibit B, which account your orator avers to be just and true. Your orator further shews, that during the time the said account was accruing, your orator never urged the said *Hannah* for any adjustment of their accounts from motives of kindness to her, as she was incapable of settling or adjusting accounts, and any demand made upon her would, in her state of infirmity, have rendered her unhappy; but your respondent was well aware that she owed him a large sum of money, but was also under the belief that her property, at her death, would go to indemnify him as far as it was sufficient for that purpose, and if insufficient, it would not place him in any worse condition, in as much as he would have kept his mother, and indulged her in the same manner that he did, if she had had no property at all. Your orator further shews, that to his surprise he learned,

after the death of his mother, that she had assigned the said three bills obligatory to one *Thomas Hutchins*, of said county, without any valuable consideration, and since the death of said *Hannah*, the said *Thomas Hutchins* hath instituted suits on said bills obligatory, and at the August term of *Harford* county court 1835, recovered three judgments thereon against your orator, as will more fully appear by short copies of said judgments herewith exhibited as part of this bill, and marked exhibit C. Your orator further shews, that at the time the said notes or bills were given, the said *Hannah* was indebted to your orator in the sum of six hundred dollars, for and on account of the over payment of her legacy by your orator as executor of his father, but that he could not plead this as a set-off to the suits brought on said notes at law, by reason of the character of the claim, it being a claim exclusively cognizable in a court of equity ; and your orator also charges, that before he had any notice of the assignment of said notes or bills obligatory, that the said *Hannah* was indebted to him in twice their amount for boarding and keeping her and her negroes and live stock, and money paid for her taxes, and that he could not on account of technical difficulties, make the said account available as a set-off, in the action at law. Your orator also charges, that the said assignments of said bills obligatory, were made without any valuable consideration being paid for the same by the said *Thomas Hutchins*, and at the time they were made, the said *Hannah* was indebted to your orator in a sum greatly exceeding their amount; and also charges, that the said *Hannah* did not leave property sufficient to pay the claims due to your orator; that your orator is the administrator of the said *Hannah*, and the estate which came to his hands is insufficient by a large sum to pay her debts. Your orator further shews, that the said *Thomas Hutchins*, although he knows that nothing was due to said *Hannah* on said notes, and that the claims on the same had been extinguished thrice over by over paying the legacy as aforesaid, and by the account aforesaid, yet he still threatens to execute the judgments aforesaid against your orator, all which is contrary to equity, and tends to the wrong and injury of your orator in the premises.

With this bill the appellee filed the exhibits mentioned in it, with an injunction bond, in the penalty of $1,200. By the short copies of the judgments, one was upon verdict and the other two by default.

The county court, (ARCHER, C. J.,) granted an injunction, which was issued and served.

The defendant answered the bill and alleged, that it is true that *Thomas Hope, Senior,* the father of complainant, departed this life, having made his last will in manner and form as in said bill is stated; that he thereby devised to the late *Mrs. Hannah Hope,* (his widow who is since deceased,) an estate for life in the one undivided third part of the plantation whereon he resided, and which he devised to complainant in fee, subject to said life estate; that he also devised to the widow, during her life, the use of part of the dwelling house, and one-third part of all his personal estate, after payment of his debts, (which were very trifling,) and the legacies of six hundred dollars each, bequeathed by him to his three daughters; that he bequeathed the residue of his personal estate to complainant, whom he appointed his executor, and that said will, of which exhibit A is admitted to be a correct copy, was duly admitted to probate, and that the complainant took the whole estate into possession, and gave bond to pay debts and legacies. Respondent admits, that on the distribution of the estate of complainant's testator, the widow received the specific articles mentioned in said bill, and therein charged to have been delivered to her, *but he denies that she received any more in value than her just proportion, or more than she was legally entitled to have.* Complainant's testator died seized of a large quantity of real estate, besides the plantation in which as aforesaid, he devised his widow a life estate for one-third, to wit: the farm devised by him to his son *Ezra Hope,* containing, &c., and the farm devised by him to his son *William,* containing, &c., as by the will will appear; in all which she was entitled by law to her right of dower, (provided she renounced all interest under the will,) and also to the one-third of the personal estate before payment of the legacies, so that her interest in the estate

of the deceased under the will, was much less than it was independently of and in opposition to it.    *Mrs. Hope*, as this respondent knows and avers, had intended to renounce all interest under the will, and take all that the law would allow her, and in order to induce her to change this determination, complainant, as executor and residuary legatee, did as respondent alleges, offer and agree, that if she would stand to and abide by the will, she should have the one-third of all the personal estate of the testator, before payment of the debts and legacies; accordingly and in order to carry this agreement into effect, *Abel Alderson* aud *William Nelson*, the gentlemen mentioned in said bill of complaint, appraised all the personal property of the testator, *and complainant delivered over to Mrs. Hannah Hope the articles specified in said bill and charged to have been delivered, with a full knowledge of their real value, and of the proportion they bore to the value of the whole personal estate, and not under any mistake whatever by the complainant or the said Hannah,* who was not at that time very old and infirm, and unable to ascertain the value of the property she got, but on the contrary, very well understood her own rights and the responsibility of the complainant to her, and they settled the same as a strict business transaction, and acted upon it as finally adjusted from that time, being not long after the death of her husband in 1815, up to the period of the death of said *Hannah Hope.*    Eighteen or twenty years have now elapsed since the above mentioned distribution of the estate of *Thomas Hope*, deceased, was made, and during all that time (until of late,) complainant has acquiesced in the *settlement* which was made by himself, and never sought or demanded to have any part of the property so delivered, or its value returned or refunded, although in his settlement with *Mrs. Hope* for the rents of her lands, he had frequent opportunities of correcting the mistake, if any such had existed.    But on the contrary, he gave her his notes under seal for the full amount of the rent due her, without making any deduction on account of the alleged over-payment of her legacy, and now attempts to avoid the payment of said notes by an averment that he never

intended to pay them when he gave them. Respondent submits to this honorable court, whether complainant should be permitted now, after the death of *Mrs. Hope*, and without any allegation of fraud, and without having discovered any new fact of which he was not before conversant, to open a transaction on which he has slept for eighteen years, to the prejudice of a third party to the settlement. Respondent claims the benefit of the act of limitations, passed and enacted by the General Assembly of Maryland in the year seventeen hundred and fifteen, and relies upon it as barring forever all demands of complainant for the alleged over-payment to *Mrs. Hannah Hope* of her legacy, and as also a full bar to the whole of the pretended account exhibited by the complainant with his said bill. Further answering respondent admits, that complainant and his mother, *Mrs. Hannah Hope*, lived together in the house which was owned by them jointly under the will, and that complainant occupied and cultivated the entire farm, including the part devised to his mother, which was never laid off, but was an undivided third of the whole, and that the three several bills obligatory referred to in said bill of complaint, were given by complainant to *Mrs. Hope*, in payment of the rent due by him for the use and occupation of her portion of the farm, from the death of complainant's father to the year eighteen hundred and twenty-one, comprising a period of about six years; for the two first of which he allowed her the rent of one hundred dollars per annum, and for the other four years eighty dollars per annum. But respondent denies that at the time of giving said bill obligatory, complainant had any claim or demand against *Mrs. Hope* for the trouble and expense of boarding and providing for her, (as he alleges in his bill,) or on any other account whatsoever, which he was then entitled to deduct from the money rent reserved for the use of her lands, or which he can now *set-off* against said bills obligatory. He denies that any debt or claim for the boarding of *Mrs. Hope*, has accrued either before or since the execution of said bills obligatory, which has not been fully adjusted and satisfied. For in point of fact respondent says, that the boarding of *Mrs.*

*Hope* was taken into consideration in the settlement for the rent due her, he having agreed to furnish her with boarding in addition to the annual rent reserved in money, as the consideration for the use and occupation of her lands, and then said notes or bills were given by him for the nett balance due her in money, over and above the expense of her board, and that the said notes were not given as is falsely alleged, to gratify the caprice of a peevish and fretful old woman, but on payment of a just and honest debt, which the complainant then owed to his mother, and sought by all his artifices to reduce and diminish, as the relinquishment of interest shews, as well as the indulgence in time.   As conclusive evidence whereof, respondent begs leave to refer your Honors to articles of agreement entered into between said *Hannah Hope* and complainant, in April eighteen hundred and eighteen, at which time the terms on which complainant farmed and occupied her third of the plantation were first reduced to writing, and he herewith files a copy of said articles marked respondents exhibit A, which he prays may be taken as a part of this answer.   Prior to this time complainant had rented of *Mrs. Hope* by parol, and there is no written evidence of their contract.   But these articles contain and shew the terms on which the complainant had farmed the premises previously to the year eighteen hundred and eighteen, and in every way correspond with the verbal lease under which he held from the death of the late *Thomas Hope,* until the date of these articles of agreement, excepting that the rent reserved in money was then reduced from one hundred dollars per annum to eighty dollars.   From these articles of agreement, it appears that complainant was to occupy and farm the whole of the plantation of which as aforesaid, *Mrs. Hope* owned an undivided third, and was to pay her eighty dollars in money, and was also to furnish her amongst other things, particularly specified, with "house room, flour, meal, meat and fowls, for the use of her table, and a horse to ride on, &c."   And respondent avers, that these articles though only originally intended, as would appear from their face, to have effect for three years, remained as a continuing and subsisting agreement until

*Mrs. Hope's* death, excepting as altered in some trivial particulars by the writing annexed thereto, bearing date August eighteen hundred and twenty-two, a copy of which is also herewith filed as part of this answer. As regards the boarding of the negroes belonging to *Mrs. Hope,* with which complainant has charged her in the account filed by him marked exhibit B, respondent denies that it is a just and proper charge, and says, that during all the time for which she is charged with their boarding, these negroes were almost constantly in the employ of complainant, and were used by him as his own; that the value of services rendered by them was far more than equivalent to the expense of keeping them, and if there was an indebtedness on either part in regard to said negroes, it was an indebtedness on the part of complainant for their hire; but as he was her son, *Mrs. Hope* never made any charge against him for their services, unless she may have taken it into consideration in the final distribution of her property among her children. Further answering respondent says, that he married one of the daughters of *Mrs. Hannah Hope,* and he admits that in less than a year after the execution of said bills obligatory, she signed and delivered them over to respondent as a gift to him and his wife, without any other consideration than the natural love and affection she bore them, and her wish to make, what she claimed, a fair and proper distribution of her property before her death, and of which said distribution the complainant was not only fully apprised, but as party thereto, and accepting gifts and bounties under the same ; against the fairness of this distribution, the complainant, *Thomas Hope,* should be the last to make complaint, for, independently of his mother's right to dispose of her property as she pleased, respondent avers, that she gave complainant the use of her negroes during her life, without hire, one hundred dollars in money and a valuable horse, and released him from the payment of interest on the bills obligatory, referred to by complainant, from their date until one year after her death. These furnish a fund sufficient to discharge all his fancied claims against *Mrs. Hope,* and until it is exhausted, he can have no

pretext for demanding payment from her assignees.    But respondent denies, that the assignment was made to him without the knowledge of complainant, who, as he avers, had notice of the fact either at the time or within a very short period afterwards, and less than a year after it was made, and before then, of her intention to make said assignments.  He denies the allegation, that *Mrs. Hope* did not leave sufficient property to pay her just debts, and states his belief, that she left no debts unpaid except perhaps her shoemaker's bill, to the amount of a few dollars, or some such trifling matter.    And he denies and resists the right claimed by complainant in his bill to set-off against or deduct from said bills obligatory, or from the judgments which respondent as assignee has obtained thereon in *Harford* county court, any debt, claim or demand, which he either has or claims to have against *Mrs. Hope,* accruing subsequently to the assignment, and respondent refers to the solemn oath of the complainant's mother annexed to the said bills obligatory, as shewing that no just discounts, off-sets or payments in regard to them, existed at the time of the said assignments.    But as a full and conclusive answer to all said bill of complaint, *other than and except such parts thereof as relate to the alleged over-payment to Mrs. Hannah Hope* of the legacy bequeathed to her by *Thomas Hope, Senior,* and complainant's right to set-off said alleged over-payment against the bills obligatory, referred to in said bill of complaint, and which is itself barred by the statute of limitations and the lapse of time, herein before relied on as a part of this answer, respondent saith, that he instituted suits at law in *Harford* county court on the three several bills obligatory, mentioned in said bill of complaint, and at the August term of said court, in the year eighteen hundred and thirty-five, obtained judgments thereon, and that at the trial of said suits at law, all and singular the matters and things and circumstances in said bill set forth, and on which complainant grounds his prayer for relief in the premises, except, as aforesaid, so much of said bill as relates to *Mrs. Hope's* legacy, were presented by the pleadings and issues joined by the parties, and were fully

weighed, considered and determined, as by copy of the record thereof herewith filed as part of this answer will more fully appear. Respondent denies, that complainant was prevented by technical difficulties from availing himself of said circumstances as a defence to said suits at law, but on the contrary avers, that all and singular said matters and things, except as herein before excepted, being the pretended claim for over-payment of legacy, were fully brought before the court and jury, and said suits at law were decided, and said judgments were rendered in favor of this respondent, upon the true and substantial merits of the cases, and agreeably with the laws of the land and the equity and right of the matter. Respondent thereupon submits to this honorable court, whether the said questions having been once decided in suits between the same parties, by a court of competent jurisdiction, complainant can again put the same matters in issue, and whether he is not forever barred of the relief prayed in his said bill of complaint in relation to said matters.

The exhibit A, referred to in the answer, was not filed in the Court of Chancery.

The defendant filed with his answer a transcript of the record in his action at law against the complainant, upon the complainant's bond to *Hannah Hope*, assigned to the defendant, in which the said *Thomas Hope* had pleaded payment, and account in bar filed; the plaintiff at law replied, non-payment and issue; account in bar denied, and issue; limitations to account in bar, rejoinder and issue; accord and satisfaction to account in bar, general rejoinder and issue. The account in bar filed by *Thomas Hope*, the defendant at law, was from 1823 to 1833, for the boarding of *Mrs. H. Hope*, her servant woman and child, and keeping two cows, taxes, &c., crediting her annually with rent of her land; and also charged her with $600 over-paid in the distribution of *Thomas Hope, Senior's* estate. It appeared by the bill of exception, that the defendant *Thomas Hope*, at the trial of the action at law, had offered proof that *Mrs. Hope* was indebted to him in the sum of six hundred dollars for money over-paid her on account of a legacy

bequeathed to her by her late husband, of whose will the defendant was executor, and that upon the objection of the plaintiff at law, *Thomas Hutchins*, to the admissibility of the evidence so offered, it was rejected by the county court.

Upon the suggestion of the complainant, this cause was removed to the Court of Chancery, where the defendant moved for a dissolution of the injunction. On the 26th of April, 1841, the Chancellor (BLAND) continued it until final hearing or further order. The defendant in equity appealed to this court.

The appeal was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By CONSTABLE for the appellant, and
By O. SCOTT for the appellee.

SPENCE, J. delivered the opinion of the court.

If the answer swears away or denies the equity stated in the bill, the injunction will be dissolved; but if the equity be admitted or is not denied, or if new matter is set up in the answer by way of avoidance of any material allegation in the bill, the injunction will be continued until the final hearing or further order.

In this case, one of the material allegations in the bill is, that in the settlement of the estate of *Thomas Hope*, made between the complainant, who was executor of said testator, and *Hannah Hope*, who was a legatee under the will of *Thomas Hope*, who assigned the notes mentioned in these proceedings to the respondent, that from inadvertence and mistake, he the said complainant over-paid the said *Hannah Hope* the sum of six hundred dollars.

The answer admits, that *Mrs. Hope* received the property mentioned in this allegation in the bill, but denies that it was any more than she was entitled to, and by way of avoidance of the same makes this averment: " *Mrs. Hope*, as the respondent knows and avers, had intended to renounce all interest under the will, and take all that the law would allow her, and

in order to induce her to change this determination, the complainant as executor and residuary legatee, did, as respondent alleges, offer and agree, that if she would stand to and abide by the will, she should have one third of all the personal estate of the testator, before payment of the debts and legacies."

This agreement set up in the answer, is a distinct fact, set up in avoidance or discharge, and the answer alone will not support it. In such case the defence must be made out by proof. *Ringgold vs. Ringgold,* 1 *Harr. and Gill,* 81.

The plea of limitation was relied on in the argument as a sufficient ground to dissolve the injunction; but we think differently, and therefore affirm the Chancellor's order, and remand the cause, that such further proceedings may be had therein as the nature of the case may require.

ORDER AFFIRMED AND CAUSE REMANDED.