## Thomas Hutchins *vs.* Thomas Hope.—*December* 1848.

*H, senior*, devised to his widow one-third of his personal estate, after the payment of debts and three legacies, amounting to $1800. *H, junior*, the executor, gave bond for the payment of debts and legacies. For the purpose of distribution two persons were chosen, by whom the entire personal estate of the deceased was appraised at $3306; and the executor paid his mother, in 1815, one-third, valued at $1102. In 1822, *H, junior*, paid his notes to his mother, for rent then due by him. These she assigned to the appellant. In 1836, the appellee filed his bill against the appellant, alleging, that the widow was overpaid by the executor, by inadvertence and mistake, $600 on her claim under the will; that the appellee also boarded and furnished her and her negroes. HELD: it was not to be presumed, that the widow claimed under the will of *H, senior*, but that she claimed and received, with the privity of the executor, what she might rightfully have claimed after rejecting the will, one-third of the personal property after payment of debts, and that both understood her true position.

After a lapse of twenty years, it is too late to open a settlement of accounts upon the ground of inadvertency, when both parties knew their rights.

A claim on which an action at law might have been sustained, cannot be used as a set-off in equity against an assignee of another legal claim.

Injunction causes upon motions to dissolve, are usually heard on bill and answer. Allegations in the answer, not responsive to the bill, without proof, do not affect the injunction.

At final hearing the defendant need not prove his allegations, in avoidance, in the first instance. The complainant must then establish his case. All his allegations then not proved are taken against him.

APPEAL from the Court of Chancery.

This cause was before this court in 1841, (see 12 *G. & J.*, 244.) The appeal was then taken from the refusal of the chancellor, (BLAND,) upon bill and answer to dissolve the injunction, which the present appellee, *Thomas Hope*, had obtained upon his bill. After the affirmance of the chancellor's order upon that appeal, the cause was remanded, proof

taken, and the injunction made perpetual upon the final hearing by (Bland) chancellor. The subsequent proceedings in equity are sufficiently stated in the opinion of this court upon the present appeal.

The appeal was taken by the defendant below, and the cause argued before Spence, Martin and Frick.

By H. W. Archer for the appellant, and
By C. McLean for the appellee.

Frick J., delivered the opinion of this court.

The bill and answer in this cause, will be found in 12 *G. & J.*, 244; where the chancellor's order, refusing to dissolve the injunction, upon the answer of the appellant, was affirmed; and the cases having been remanded, the injunction, on final hearing by the chancellor, was ruled perpetual; and this decision, by appeal, comes now under review of this court.

The material allegations in the bill, are:—1. That *Mrs. Hope*, under whom the appellant claims as assignee, by inadvertence and mistake of the appellee, the executor was overpaid $600 of her claim, under the will. And 2. That the appellee boarded and furnished her, and her negroes and stock; for which he claims to be allowed, against certain bills obligatory, executed to her in her lifetime, and by her assigned to the appellant.

Supposing her to have acquiesced in, and taken under the will of *Thomas Hope, Sen.*, this alleged overpayment is then manifest. The terms of the will assigned to her one-third of the personal estate, *after the* payment of debts *and three legacies, amounting to* $1800. The executor gave bond for the payment of debts and legacies; and for the purpose of distribution, two persons were chosen, by whom the entire personal estate of the deceased was appraised; amounting, by the appraisement, to $3306; out of which the appellee passed over to *Mrs. Hope*, specific property of the estate, to the exact value of $1102.

But can such a presumption of acquiescence be predicated upon this state of facts, so directly opposed to it, in which she

must have believed that she received, and the executor supposed he had paid her, but one-third of the residue of the estate—*after allowing for the debts and legacies.* She was entitled to a full third of the personal estate, to the exclusion of these legacies; and that she could have rejected the will and claimed to this extent, is conceded. If, as an ignorant woman, she was uninformed of her rights, shall we presume against the executor, her son, that she was left in ignorance by him of this, her right of election? Is not the reverse a more probable and favorable interpretation *in his behalf*, that she was made to understand her true position, and that she required, and received, all that the law allotted to her, and no more? In the adjustment of this fund of $3300, more than one-half of it to be applied to specific legacies, it is difficult to conceive so gross an error to have been committed, and to remain undetected so long. The transfer and delivery to her, took place soon after her husband's death in 1815, and she appears to have held or disposed of the property as her own, up to the period of her death in 1833. As the specific legacies were paid off, this mistake, if such it was, must have been evident, that left but $1500 of the personalty, of which, by the terms of the will, the widow was to receive one-third, and the appellee, as residuary legatee, two-thirds, "after payment of debts and legacies." And yet she received of this sum, $1100; leaving to the appellee, $400; less the debts of the estate, if any existed.

In the absence of any evidence to weaken it, the rational inference then is, that she claimed and received what the law allowed her, with the privity of the appellant; who passed it over to her, and could not have failed to see at the time, how the arrangement affected him as regards the small balance remaining of the personalty. If a mistake, in the nature of things, it must have been made apparent then, or soon after; and if now only brought to light, after this lapse of years, some causes or circumstances ought to be adduced to explain it, other than what are relied upon and deduced from the will itself and its provisions. It is part of the case, also, that this will restricted her to a *smaller portion of the realty* than the law would award her; and upon the presumption that her son,

the executor, dealt fairly with her, she was by him apprized of her rights in this particular; and he properly surrendered, and she received, her full third of the personal estate.

If *Mrs. Hope* had received any thing beyond what was her just and rightful portion of the estate, it would afford some ground for the relief asked by the appellee. But when all that was done, is so entirely consistent with her rights, and is so easily reconciled and accounted for by the presumption, that she claimed and the executor acquiesced; it is now too late to open and repudiate this settlement, by recalling the will, and giving to its provisions their literal import and construction, to establish the allegation of inadvertence and mistake on the part of the appellee.

But we are not left to inference alone in the matter. We have before us the actual terms of the settlement between the widow and the executor, by which the whole third of the personalty is conceded to her as she received it.

The agreement to this effect, found in the record, runs thus:

"A list of articles taken by *Mrs. Hannah Hope*, being one-third part of the property appraised by *Wm. Nelson* and *A. Alderson*, by agreement between the said *H. H.* and *Thomas Hope*, executor of *Thomas Hope* deceased, and in part of *her third of the whole personal estate* of the deceased." And after enumerating them to the value of $1102, proceeds: "The above statement is made agreeably to an agreement made between *Hannah Hope* and me, for the division of the personal property of *Thomas Hope*, late of Harford county, deceased." Signed and sealed, "*Thos. Hope.*"

It is impossible to conjecture, after this, upon what the alleged mistake is to rest, unless upon the naked contrast or comparison of this agreement with the provisions of the will, which assigns to her only one-third after payment of the legacies. Yet this agreement has been acquiesced in through a long series of years, without the slightest evidence that it was to be impugned or disputed by the appellee. With the will before him, and the duty incumbent upon him to execute it, he must have been fully aware of his rights, and the limited

pretensions of *Mrs. Hope*, if it was intended by the parties to sustain the will.

In 1822, the notes (which are here enjoined,) were given by him to *Mrs. Hope*. They were given in settlement between them, for rent due by him at the time. This alleged mistake was said to be made several years before this settlement; and yet, if any such ground of sett-off or claim then existed, it was not brought into view. If it really existed, and as is maintained, was reserved, under the peculiar circumstances of the parties, until the maturity of the notes, and after the death of *Mrs. Hope*, it is, at all events, too late to assert it against her assignee, whose right and claim, as a *bona fide* holder of them, is unimpeached; and the consideration by which he holds them, being legally sufficient to protect him. Looking, then, to the terms and provisions of this will,—which are so simple, that it is almost impossible the appellee could have mistaken his rights under it; regarding, further, the emphatic terms of the agreement, by which the will is disregarded, and one-third of the whole personal estate conceded to her, and the long acquiescence of the appellee, (no matter under what circumstances,) in the settlement thus made,—we must conclude, that as *Mrs. Hope* received no more than what she might legally and rightfully have claimed, there is no such mistake or inadvertence on the part of the appellee, as will entitle him to the relief he seeks in equity.

On the claim set up in the second place, for board furnished to *Mrs. Hope*, and her negroes, and stock, it is sufficient to say that if such indebtedness existed, it was a legal defence to the suits at law;—that it appears from the record, it was pleaded in bar at the trial, and was passed upon by the court and jury; and is now no further subject of enquiry or revision by this court.

When this case was formerly before this court upon the bill and answer, the injunction was continued unto the final hearing, inasmuch as the answer was not responsive to the allegations of the bill, but set up other, and distinct matters in avoidance of the complainants equity. Nothing short of the proof of such a defence, at that stage of the cause, could be

allowed to affect the injunction. But upon the final hearing, it is not for the respondent to sustain this new or evasive matter set up in defence;—at all events, not until the complainant has established the allegations of his bill. At a final hearing, every allegation is taken against the complainant that is not proved by him. It is shewn, in this case, that the complainant has not satisfactorily established the alleged inadvertence and mistake, and the matter offered in avoidance is thus necessarily out of the case. But even if it could be deemed material (which we think it is not,) in the present aspect of the case, in our opinion the agreement before recited, between the appellee and *Mrs. Hope,* sustains the defence set up, and is, in any view, conclusive of the case.

The injunction is therefore dissolved.

DECREE REVERSED.