# THE STATE OF MARYLAND, *vs.* THE NORTHERN CENTRAL RAILWAY COMPANY.

The Legislature has power to confer on the Court of Appeals the right to hear appeals in special cases, but such a law, to be constitutional, must leave the judicial functions of the court untrammelled.

The mere enumeration, in such a law, of the questions referred to the appellate court, which questions were all necessarily involved in the decision appealed from, neither enlarges nor restricts the powers of the appellate court, nor invests it with original jurisdiction.

The revision of the interlocutory orders and decrees, affecting rights of courts of original jurisdiction, is as much an appellate power as the revision of their final decrees; interlocutory judgments and decrees, affecting rights, must, *so far as they go,* have the same basis as final judgments and decrees.

Corporations owing their corporate existence, in part, to the State of Maryland, and exercising their franchises therein, may be restrained here from expending their funds for any other than corporate purposes anywhere.

A plea, by a corporation, to the jurisdiction of a Maryland court, on the ground that the corporate property lies partly in another State, or that its corporate existence is derived, in part, from a charter of another State, is not tenable.

Such a corporation must, for the purposes of justice, be treated as a separate corporation by the courts of each State from which it derives its being; that is, as a domestic corporation to the extent of the State in which it acts, and as a foreign corporation as regards the other sources of its existence.

The Northern Central Railway Company, whose road lies partly in this State and partly in Pennsylvania, and was chartered by both States, executed a mortgage of the entire line of its road, with all the tolls and revenues thereof, to the State of Maryland, to secure the payment thereto of an annuity of $90,000, and under this mortgage the State of Maryland stood as *second* and *third* incumbrancer; HELD:

That upon its being shown that this company, in violation of its duty, was applying, and intended to continue to apply, its revenues, the only means of paying this annuity, to the payment of junior incumbrances, this court ought to interfere, upon the application of the State, to the extent of the limits of its jurisdiction, by injunction, and the appointment of a *receiver* of the mortgaged property.

As a general rule, an injunction before final hearing does not necessarily prejudice any party: its province is, to preserve the property or fund in controversy, and effect ultimate justice.

In cases of waste or nuisance, an injunction will be granted; where a mort-

25      v.18

gagor in possession is committing waste, equity will restrain him, for as the whole estate is the security for the money advanced, the mortgagor ought not to be allowed to diminish it.

In general where personal property, or the rents and profits of real estate in dispute, are in imminent danger of being wasted, a receiver may be appointed to take care of it for the benefit of all concerned, during the controversy.

Equity will appoint a receiver at the instance of parties beneficially interested, where there is no fraud or spoliation, if it can be satisfactorily established there is danger to the estate or fund, unless such a step is taken.

A receiver is proper if the fund is in danger, and this principle reconciles the cases found in the books; fraud, or imminent danger, if the immediate possession should not be taken by the court, must be clearly proved, and it is not against public policy to appoint a receiver over the property of corporations.

A mortgage of the *entire line* of a railroad, with all the *tolls and revenue* thereof, covers not only the line of the road, but all the *rolling stock* and fixtures, whether movable or immovable, essential to the production of tolls and revenue.

A motion to reinstate an injunction is equivalent to an application for an injunction after bill and answer filed, and places the parties in the same attitude, as to the facts to be considered, as upon motion to dissolve upon coming in of an answer.

In such a case the court is confined to the facts stated in the bill, and to the answer to those facts; if the facts of the bill be admitted, or not denied, or if new matter be set up by way of avoidance, the injunction will be continued; matter set up in avoidance or discharge, where the matter of avoidance is a distinct fact, must be proved.

In answer to a bill filed by the State against a railroad company, to enforce payment of an annuity, secured by a mortgage of the company's road, *tolls*, and revenue, the company, in its answer, set up, by way of off-set or discount, the fact, that certain bridges on its road were destroyed by the mayor and police commissioners of Baltimore, and with the approval and sanction of the governor of the State, and claimed a large sum for such damage and waste. HELD :

That there is no principle of discount, set-off or recouper, which would authorize this court to recognize such a claim as a debt, obligation, or liability, for damages liquidated or unliquidated.

APPEAL from the Circuit Court for Baltimore City.

This appeal is taken from an order of the court below, refusing to reinstate an injunction, and appoint a receiver as prayed

in the information filed on the part of the appellant. The allegations of the information and answers, and all the facts of the case are fully stated in the opinion of this court, and in the following opinion of the court below, (KREBS, J.,) delivered upon passing the order appealed from:

"The bill in this case is filed by the State of Maryland, as mortgagee of the *entire line of railroad* belonging to the Northern Central Railway Company, *with all the revenue or tolls thereof*, praying a decree for the sale of the said railway and mortgaged premises, or so much thereof as may be necessary to raise the sum of $1,500,000, the estimated principal value of the annuity of $90,000, secured to be paid to the State by the company. The bill alleges a default on the part of the company in the payment of part of the annuity, as the ground of the relief which it asks, and also prays for an injunction, to restrain the company from the application of its revenues, to the payment of certain debts, and interest on several of its bonds, to all of which the State claims a priority of lien by virtue of its said mortgage. It prays further, and more especially, that a receiver may be appointed, to take charge of the said railway, and other, the mortgaged premises, *and work the same* and apply the revenues thereof, under the direction of this court, to the arrears of the said annuity, now due, and hereafter to become due to the said State. I shall consider, first, the application for the appointment of a receiver. It is to be observed, that this is the case of a first, or legal mortgagee, who, at the time of filing his bill for foreclosure, by sale of the mortgaged premises, asks the court to appoint a receiver to take charge of the mortgaged property, and collect and receive the income and revenue thereof. According to the well established chancery practice in England, this is never done upon the application of such a mortgagee. In *"Berney vs. Sewell*, 1 *Jac. & Walk.*, 627, *Lord Eldon* says: If a man has a legal mortgage, he cannot have a receiver appointed; he has nothing to do but to take possession. The rule about receivers is very clear; a mortgagee who has the legal estate cannot have a re-

ceiver.'' *Daniell* in his *Chancery Practice, Vol. 3, page* 245, referring to this decision, says: ''As the object of appointing a receiver, is to protect the property in dispute, pending a litigation, the court will not appoint a receiver, on the application of a party who possesses the power of protecting the property without it.'' *Sturch vs. Young*, 5 *Beav.*, 557. Assuming, however, that the court will entertain the application of the first, or legal mortgagee, for the appointment of a receiver, in what cases will it be granted? After a careful examination of the decisions of courts of equity with a view to the obtaining of a correct answer to this question, I am satisfied that they establish this rule, viz: where no provision is made to give the mortgagee a lien on the rents and profits, and the property is not a sufficient security for the particular debt of the complainant asking for a receiver, and the mortgagor, or other person in possession, who is personally responsible for it, is insolvent, equity will appoint a receiver, before a decree of foreclosure. The court in *Warner vs. Gouverneur*, 1 *Barb.*, 36, states the rule substantially in the above language. To the same effect are the decisions in the following cases, 5 *Paige*, 39, *Bank of Ogdensburgh vs. Arnold;* 8 *Ibid.*, 565, *Sea Ins. Co., vs. Stebbins;* 11 *Ibid.*, 436, *Astor vs. Turner;* 3 *Edw.*, 588, *Shotwell vs. Smith;* 4 *Ibid.*, 413, *Post vs. Dorr;* 2 *Halsted's Ch. Rep.*, 154, *Best vs. Schermier;* 3 *Sandf. Ch. Rep.*, 69, *Lofsky vs. Maujer;* 6 *Hare*, 620, *Meaden vs. Sealy.* Now it is not pretended that there is any thing in this mortgage that gives to the State any specific lien upon the tolls and income of this road; the mortgagor is therefore entitled under it to all the rights, which, according to the decisions upon this subject, belong to the mortgagor under ordinary circumstances. The bill shows that the company has been in possession of the road, working it, and receiving the tolls and profits thereof since the alleged default, and at the time of the filing of the bill, and the law is settled, that were the mortgagor is permitted so to remain in possession of the premises, and take the emoluments and rents, he is to be treated as owner to the time of the con-

summation of the proceedings for foreclosure, without any liability to account to the mortgagee therefor. 2 *Sumner*, 144. 1 *Pick*, 87. 14 *Ibid.*, 525, 531. 1 *Gratt*, 291. 28 *Missouri*, 142. 1 *Jac. & Walk.*, 627. 25 *Maine*, 341. If the law be as last above stated, and if the rule which I have deduced from the decisions, by which courts of equity are regulated in the appointment of receivers in mortgage cases, be the true rule, then it is clear that the complainant in its bill has not stated a case which would make it proper for this court to interfere with the defendant's possession of this mortgaged property, and the receipt of the tolls and revenues thereof. But in addition to the objections to such a step, growing out of the foregoing views of the law upon this subject, there is another which, in my opinion, is insuperable. The bill prays that a receiver may be appointed, "to take charge of the said railway, and other, the mortgaged premises, and *work* the same," and *apply the revenues thereof, &c.* Upon reference to the terms of the mortgage, it will be found that the only property conveyed by it is the *line of railroad*, with the revenue and tolls thereof as incidents and appurtenances, but it does not transfer to the mortgagee the engines and rolling stock of the company. This court, therefore, would not have the power to put into the hands of its receiver, if it should appoint one, the engines, cars, and rolling stock, belonging to the company, and with which the *road is worked*; it would thus be impossible for this court to have the road *worked* by a receiver. The cases in which the court has had charge of manufacturing establishments and of other works, and had them conducted by its officers or agents, have been those in which the mortgagor has transferred to the mortgagee all the machinery and apparatus necessary to put them in operation, or to carry on the business for which they were designed. That has not been done in this case, and the court has no power of supplying itself with the means requisite for the working of this road, and conveying passengers and freight thereon. For these reasons I must decline the appointment of a receiver, as prayed in the complainant's bill. The

application for the injunction and receiver in this case has been submitted after argument, upon the bill, petition, and the answers of the defendant, and I am of opinion that this court should not order an injunction to restrain the defendant as prayed by the complainant, it appearing from the record that the company relies upon various defences, and denies altogether any default or liability to the complainant at the time of the application, which considerations alone have much weight with the court in influencing its refusal to grant either the injunction or receiver.   The conclusions to which I have arrived upon the points considered in the foregoing opinion, renders it unnecessary for me to examine the various important questions presented upon the record, and argued by the solicitors of the respective parties."

The order refusing to reinstate the injunction and appoint a receiver, was passed on the 29th of October 1861, and the appeal therefrom was taken by the State on the 4th of November following, and on the 13th of December following, the Legislature passed an Act, (Act of 1862, ch.2;) "That the Court of Appeals be, and the same is hereby authorised and requested at the earliest convenient day during the sittings of the present term of said court, to entertain the appeal of the State of Maryland from an order of the Circuit court for Baltimore city, passed on the 29th of October 1861, in a cause in said court, on the information of the State of Maryland against the Northern Central Railway Company and others; and to hear the same appeal on the transcript of the proceedings in said cause, now filed in the office of the clerk of the Court of Appeals, and to determine thereupon all such questions as may be fairly presented by the said transcript, touching the construction and operation of the mortgage from the company to the said State, and the equity of the State to be relieved by the issuing of an injunction and appointing a receiver, as prayed; and the right of the said company to off-sets or discounts, as claimed in said cause, to the end that this General Assembly may be able to devise such measures, if any, as may be required to do right as between the State and the said company."

The cause was argued before Bowie, C. J., Bartol, Goldsborough and Cochran, J.

*Milton Whitney* and *Thos. S. Alexander,* for the appellant.

1st. The appeal is properly before this court. Upon the Code, itself, it is submitted, the appeal is properly taken from the order refusing the injunction. But all difficulty upon the point is removed by the special Act providing for this appeal. The cases cited on the part of the appellee show that, the Legislature has power to pass such a law, provided this court is left free in the exercise of its judicial functions. The law in question simply authorizes the appeal to be heard at the present term of the court, and *requests* the court to decide thereon, the questions, and the questions only, which the court below must of necessity have decided, in passing the order appealed from.

2nd. The *revenues* of the company, by the terms of its mortgage to the State, are dedicated to the payment of the annuity recovered by that mortgage, and the State is entitled to an injunction in order to restrain the company from misapplying its revenues to other purposes. *Eden. on Inj.,* 205. 2 *Johns. Ch. Rep.,* 148, *Brady vs. Waldron.* 3 *Atk.,* 210, *Robinson vs. Litton.* 1 *Dick.,* 75, *Usborne vs. Usborne.* 2 *Story's Eq.,* secs. 915 to 918. 2 *Hare.,* 239, *King vs. Smith.* 2 *Bland,* 461, *Murdock's Case.* 1 *Md. Ch. Dec.,* 87, *Brown vs. Stewart.*

3rd. The answer of the company admits, that revenues which were dedicated by the mortgage to the payment of this annuity, have been applied to other purposes, and this misapplication, thus confessed, entitles the State to a receiver in order to prevent a further misapplication. This equity does not arise out of, or depend upon, the inadequacy of the fund, if properly applied, to satisfy the charge, but upon the fraudulent intent which, in the absence of *mala fides,* is to be inferred from the fact of misapplication. 3 *Johns. Ch. Rep.,* 48, *Boyd vs. Murray.* 13 *Ves.,* 266, *Middleton vs. Dodswell.*

12 Ves., 4, Anonymous. 2 Story's Eq., sec. 836. 5 Paige, 38, Bank vs. Arnold. The jurisdiction of a court of equity to interfere by injunction and receiver, over the affairs of a corporation like this, and in a case like this, cannot be questioned. The Supreme Court has decided it in Covington Drawbridge Co., vs. Shepherd, et al., 21 How., 124, 125; White Water Valley Canal Co., vs. Vallette, et al., 21 How., 422. See, also, 31 Eng. Law & Eq. Rep., 436, Evans vs. Coventry. The mortgagee can enter and appoint a receiver, and then call on a court of equity to receive the accounts of the receiver, and if he can do this, why can he not apply to the court, in the first instance, for the appointment of a receiver?

4th. The order of the court below supposes that the State is the prior mortgagee of the entire fund, and by entry into possession may constitute itself the receiver of the entire revenues of the road. In fact there are incumbrances on different parcels of the road, which are entitled to priority over that of the State. And it is not true, as a universal proposition of law, that equity will not aid the mortgagee of the legal estate. He is entitled to the aid of the court whenever the management of the estate requires an unusual degree of skill, labor and responsibility, or when the number and application of prior and subsequent liens, would expose the mortgagee to unreasonable hazard in the application of the net profits. Both conditions are shown to exist in this case. 2 Story's Eq., secs. 829, 830, 837, 838. 2 Bland, 461, Murdock's Case. 1 Md. Ch. Dec. 87, Brown vs. Stewart. 3 Daniell's Ch. Pr., 1950 to 1958. Fisher on Mortgages, secs. 401, 911. The decisions of this court show, that a court of equity will interfere and appoint a receiver upon the application of a mortgagee. 10 Md. Rep., 466, Rose, et al., vs. Bevan, et al. 11 Md. Rep., 365, Blondheim vs. Moore. Ibid., 452, Triebert vs. Burgess. 12 Md. Rep., 315, Nusbaum vs. Stein.

5th. For the purposes of the present appeal it is not necessary to discuss any question in reference to the powers of the receivers when appointed, or to the authority of the court to en-

force any order which the equity of the case may require. It is to be presumed that, the right being declared, the company will yield a ready obedience to the orders of the court. Be this as it may, the court can have no difficulty in putting the receiver in possession of so much of the mortgaged premises as may be found within the State of Maryland.

6th. The question then is, what does this mortgage cover and convey? We insist it not only includes the road-bed, but also the rolling stock, and other properties which are necessary for the working of the road and the production of profit therefrom. Looking to the morality of the case, this mortgage should cover the same property as that covered by the mortgages under the previous laws of 1834, ch. 241, sec. 10, 1837, ch. 302, and 1838, ch. 395, that is, *all the property* of the company; such was undoubtedly the intent of the State when it received this mortgage. Is there any thing upon the face of the mortgage to prevent this construction of it? It is to be so construed as to effectuate the intent of the parties, and in this case most strongly against the grantor. It conveys the *entire line* of the railroad with *all the revenues and tolls thereof*. What passes by the terms, *"line of a railroad?"* A *"railroad"* is not simply the *track* of the road, but all the *rolling stock* necessary to constitute it a *railroad;* it involves the franchises and all that is necessary to make it a railroad as generally understood. Locomotives, cars, &c., are a part of the railroad necessarily incident to it. Locomotives and cars are like the shuttle to a loom. A grant of a loom would pass the shuttle. Every thing necessary to work the road passes by the grant of the railroad. Fish in a fish-pond, doves in a dove-cot, deer in a park, all pass as parcel of the property, *vellein regardant passes*, as parcel of the manor. Where then is the inconsistency of saying a locomotive attached according to the nature of the subject for the purpose of working the road, passes as parcel of the road? But the authorities are clear on the point. 25 *Barb.*, 308, 310, *Seymour vs. Canandaigua Rail Road Co.* *Shep. Touch.*, 80. 1 *Simons*, 480, *Lushington vs. Sewell.*

26     v.18

3 *Green's Ch. Rep.*, 377, *Willink vs. Morris Canal Co.* 25 *Barb.*, 484, *Farmers Co.*, *vs. Hendrickson.* 6 *Greenlf's Rep.*, 154, *Farrar vs. Stockpole.* 18 *B. Munroe*, 446, *Phillips vs. Winslow.* 18 *New York*, 28, *Murdock vs. Gifford.* 3 *Mason*, 464, *Powell vs. Manf. Co.* 1 *Kernan*, 125, *Bishop vs. Bishop.* 32 *New Hamp.*, 484, *Pierce vs. Emery.*

7th. The claim of the company for off-sets or discounts, is in the nature of unliquidated damages for an illegal trespass which cannot be assessed by a court of equity, and if capable of ascertainment, could not be set off against the claim of the State as mortgagee. *Barbour on Set-off*, 17, 19, 32, 83, 87, 88, 91. *Code, Art.* 75, *secs.* 12, 13. 25 *Ala.*, 492, *Pulliam vs. Owen & Russell*, 10 *Cush.*, 92, *Pitts vs. Holmes.* 3 *Johns. Ch. Rep.*, 351, *Duncan vs. Lyon.* 15 *Wend.*, 55, *Downer vs. Eggleston.* The governor had no authority to commit, or direct or assent to the aggressions complained of, and if he did as alleged, it must have been under the pressure of State necessity, for which the Legislature alone can award compensation.

*J. Mason Campbell* and *Reverdy Johnson*, for the appellee:

1st. The case must be dismissed for want of jurisdiction in this court to entertain the appeal. By the *Constitution, Art.* 4, sec. 2, it is declared that this court shall have *appellate jurisdiction* only, and by the Code, Art. 5, *secs.* 21, 25, no appeal lies from a refusal to grant an injunction, where, as here, the order was passed, not upon the bill, but after answer filed, (17 *Md. Rep.*, 62, *Steigerwald vs. Winans*,) nor from a refusal to appoint a receiver. It is clear, therefore, that but for the *Special Act* of 1862, this appeal must be dismissed. Is that Act constitutional? It is conceded that the Legislature may pass an Act authorising an appeal, in a case where, by the general laws, no appeal could lie, but such an Act to be constitutional, must authorise an appeal so as to bring up the case, and the case *only*, that was before the court below, leaving this court perfectly free and untrammelled as to the mode and manner

State *vs.* Northern Central Railway Co.

of administering justice between the parties. The special Act in question does not simply direct this court to decide the case that was before the court below, it goes further, and directs this court to decide *other questions,* nearly all matters which arise and are to be decided in the case on *final hearing.* It does not propose that this court shall exercise appellate power only, but under color of the exercise of such power it confers *original jurisdiction.* It not only authorises and directs this court to hear the appeal from the order complained of, but requires it to determine thereupon *all such questions* as may be fairly presented by the transcript, touching the construction *and operation* of the mortgage from the company to the State, *and* the equity of the State to be relieved by an injunction and receiver as prayed, *and* the right of the company to off-sets or discounts, as claimed in the cause:—matters proper to be decided only on final hearing, and which this court, on appeal from this order, cannot determine without exercising original jurisdiction. It is submitted, therefore, that this law is unconstitutional. 8 *G. & J.,* 386, *Lawrence vs. Hicks.* 12 *G. & J.,* 285, *Prout vs. Berry.* 2 *Gill,* 147, *Prout vs. Berry.*

2nd. But taking the bill and answers together, there was no default existing on the part of the company at the time of the application for an injunction and a receiver. All the money *due* the State under the mortgage had been paid, but the State claimed a further sum, which is *not admitted* but *denied* to be due. The amount thus in controversy grows out of a serious injury to the mortgaged property committed by the mortgagee, and involving great and consequential damages, to the amount, and of the character, stated in the answers. On final hearing the proof will be weighed, upon which this injurious waste by the mortgagee of the mortgaged property is charged, but, for *the present motion,* it is a sufficient defence, that the amount which alone constitutes the alleged default *is denied* and is *in controversy.* Whether payment was made or not, is a matter to be decided on *final hearing alone;* a decision upon an interlocutory application is final as to the matter de-

cided, and the *fact of payment*, thus *in dispute*, cannot be decided upon the hearing of this motion. The company had the right to claim these damages as against the claim under the mortgage. 9 *Gill,* 89, *Smith, et al., vs. Donnell. Coote on Mortgages,* 367. 1 *Bland,* 156, *McKim vs. Thompson.* The company was in no default; the State's own agents destroyed the *bridges* and diminished the revenue.

3rd. But even if the answers be thrown out of consideration, upon the bill alone, neither an injunction nor receiver can go. There is no jurisdiction in equity to do, in this case, and against this defendant, what is asked. 2 *Johns. Ch. Rep.,* 384. *Atty. General vs. Utica Ins. Co.* 6 *Eng. Railway Cases,* 386, 395, *Russell vs. East Anglian Railway Co.* 17 *How.,* 330 to 335, *Booth vs. Clark.* Even if there were jurisdiction, the mortgage is only of the *road,* and not of the *rolling stock.* By the laws relating to this road and company, it will be seen that the State *asked,* and the mortgage conveyed, only a lien upon the *road,* a property worth an amount more than ten times sufficient to pay this annuity. In the preceding laws, when *other property* is designed to be covered, it is specially provided for—here the object was to give a lien upon the *road* only. As there could then be no appointment of a receiver of the *rolling stock,* to put the *road* into the hands of a receiver would accomplish nothing but ruin. Cars used on a railroad are *not fixtures.* 3 *Md. Ch. Dec.,* 201, *McKim vs. Mason.* 11 *Md. Rep.,* 89, *New England Car Spring Co. vs. Balt. & Ohio Railroad Co.* But will the court put the property of this company in the hands of a receiver, when it is already in the hands of directors—officers appointed by the State itself? The power to appoint a receiver in such a case, is a power to turn out the directors, and put some one else in their places; but, the power to remove directors is a power to be exercised in a court of *law;*—there is no such power in a court of equity. This court has no jurisdiction over that part of the road that lies in the State of Pennsylvania,—it can appoint no receiver over that portion of the road,—and the only effect of appointing

State *vs.* Northern Central Railway Co.

a receiver over the Maryland portion of the road, would be to remove the offices of the road, and the collection of all the tolls and revenue to the Pennsylvania end of the road, and this State might thus lose altogether its annuity. But, as a conclusive answer to the relief here asked, it is sufficient to say, that all the stipulations which the State asked for in the law directing this mortgage to be taken and accepted, and all that was thought fit to be inserted, is, that the State should have, on default made, the power *to sell the road*. Neither the law nor the mortgage stipulates for an injunction or a receiver. And, in any event, in the absence of an aver-ment that the security is insufficient, there can be no receiver appointed; in this case there is no allegation of the insolvency of any of the parties or of the company, nor is there any suf-ficient averment of apprehended loss, and unless such a case is made out, a receiver is never appointed. 1 *Barb.*, 36, *Warn-er vs. Gouverneur's Executors.* 11 *Paige*, 436, *Astor vs. Turner.*

Bowie, C. J., delivered the opinion of this court.

The rights and liabilities of the parties to this cause, spring-ing from and depending, in a great measure, upon the Acts of the General Assembly, in the proceedings referred to, we deem it necessary to a proper understanding of the character and magnitude of the interests involved, to prefix a summary of their provisions.

By an Act of the General Assembly of Maryland, passed on the 10th of March 1854, entitled, "An Act to authorize the con-solidation of the Baltimore and Susquehanna Rail Road Com-pany with the York and Maryland Line Rail Road Compa-ny," &c., the stockholders of the Baltimore and Susquehanna Rail Road Company were authorized to unite and consolidate their company, or corporation, with the York and Maryland Line Rail Road Company, the York and Cumberland Rail Road Company, and the Susquehanna Rail Road Company in the State of Pennsylvania, so as to form and constitute one

company or corporation, to be called, "The Northern Central Railway Company," upon certain conditions therein expressed, among others, "*that all existing contracts, engagements and liabilities of the Baltimore and Susquehanna Rail Road Company* shall continue *to bind said company and its property*, as fully as before the consolidation therein authorized, or that the said existing contracts, engagements and liabilities shall be duly adopted and assumed by the consolidated company."

On the same day, by an Act, entitled, "An Act to provide for the sale of the interest of the State of Maryland in the Baltimore and Susquehanna Rail Road Company, *and for the completion of the Northern Central Railway*," &c., it was enacted, "that whenever the corporation, authorized by this General Assembly to be created by the consolidation of the Baltimore and Susquehanna Rail Road Company," and the other companies above mentioned, to be known by the name of the Northern Central Railway Company, "shall have been duly established and erected, in conformity with the Act of this General Assembly, *and an Act of the General Assembly of Pennsylvania, authorizing the same*, and shall execute and acknowledge, and cause to be recorded in due form of law, *in the city of Baltimore, and in all the counties of Maryland and Pennsylvania*, in which the same may be, a mortgage to the State of Maryland of the entire line of railroad belonging to the said company, *from Baltimore to Sunbury in Pennsylvania, with all the revenue or tolls thereof*, to secure to the State of Maryland the payment of the annuity of $90,000, and shall, in all respects, comply with the provisions of this Act," then the treasurer of the State was authorized to execute and deliver to said company and its assigns, in perpetuity, a conveyance and release of all the estate and interest of the State of Maryland, in the then Baltimore and Susquehanna Rail Road Company, and *all its property*, whether as stockholder, creditor or mortgagee. It was further enacted, that the consolidated company, *in the execution of the mortgage, should covenant and bind itself to pay to the State of Maryland from its*

*date, the annuity of* $90,000 *per annum, payable into the treasury of the State in quarterly payments;* that the annuity should be extinguishable at any time within ten years thereafter, upon the full payment of *one million five hundred thousand dollars,* with all interest that may be due; that the mortgage should contain the usual conditions in such deeds, *with a clause to authorize the sale of the mortgaged property, at any time after three months subsequent to a default of the company to pay the whole amount of the annuity, which may fall due in any one year;* and upon the execution of the said mortgage and its delivery to the treasurer, then the said treasurer should execute the conveyance and release above mentioned. It was further provided by said Act, that the said mortgage, so far as it shall comprehend and include that portion of the road of the consolidated company, which now belongs to the Baltimore and Susquehanna Rail Road Company, and *which was heretofore mortgaged to the State of Maryland, shall be, in all respects,* entitled *to the same priority* which now appertains to the existing mortgage on the property of the said Baltimore and Susquehanna Rail Road Company, and that said mortgage, so far as it shall comprehend and include all that portion of the road of the consolidated company, not now belonging to the Baltimore and Susquehanna Rail Road Company, shall be entitled to a priority over any liens upon the same, bearing date and recorded after the *the first day of March* 1854, "it being the *intent* of this Act, in releasing to the consolidated Company the mortgage or mortgages heretofore given to the State by the Baltimore and Susquehanna Rail Road Company, and taking another mortgage, to retain in the new mortgage *the same priority of lien which the State now holds on that part of the road heretofore mortgaged as aforesaid,* and *also to obtain the additional security of the mortgage, by the consolidated company, of its interest in all the remaining portion of the road, between Baltimore and Sunbury.*" *Vide* Act of 1854, ch. 260, secs. 1, 2, 3.

On the 27th of January 1855, the Northern Central Railway

Company by their deed, reciting and referring to the Acts of Maryland and Pennsylvania, as authorizing the same, assigned, transferred and conveyed, unto the State of Maryland, for the considerations therein mentioned, "the entire line of railroad belonging to said company, from Baltimore to Sunbury in Pennsylvania, *with all the revenue or tolls thereof*," covenanting to pay to the treasurer of Maryland, an annuity of $90,000, in quarterly payments, in the manner provided and required by the Act of 1854, ch. 260, and *in default thereof, the State of Maryland was thereby authorized to sell the above mortgaged premises, and all the estate, right, title, interest, property, claim and demand* at law or in equity, as well of the State of Maryland as of the Northern Central Railway Company, *in and to the said mortgaged premises, and every part thereof,* as is provided by the third section of the Act of 1854, ch. 260.

The State filed its information on the 18th of December 1860, in the Circuit court for Baltimore city, suggesting that the Northern Central Railway Company was then in arrear $92,500, of the principal annuity, besides interest;—that it realized profits more than sufficient to pay the State, which, in violation of its covenants, were misapplied, and appropriated to the payment of junior obligations, and especially to the payment of interest on bonds, amounting to $2,500,000, issued long after the mortgage, and it apprehended the company intended to apply its future earnings, and earnings then in hand, in payment of interest on said bonds;—*that the company had no effects out of which the State could realize its aforesaid claims, except the property mortgaged, and had no adequate means to enforce the payment of arrears, except by sequestrating the tolls and revenue.*

The information prayed that the company be enjoined from applying the tolls and revenue to any other purpose, save only to the cost of working the railway, and maintaining the same in good order; and that a receiver may be appointed to take charge of said railway and other mortgaged premises, and work the same, and apply the revenues thereof, under the direction

of this court, to the arrear of the aforesaid annuity now due, or hereafter to be due; and that the said railway, and other, the mortgaged premises, be sold for the payment of the entire claim of the State, estimated at $1,500,000; and for other relief.

An injunction having issued, as prayed, the respondents, the Northern Central Railway Company, filed their answer on the 27th of February 1861, in which, after admitting the mortgage, the arrears of the annuity, they allege "no subsequent payments have been made on account of said annuity, owing to the fact of all the net receipts of said road being absorbed by other legitimate and more urgent objects."

"And it further saith, that the bonds, subsequent in priority to the annuity, upon which it has paid the interest, were bonds given for construction, and that it was considered a matter of necessity to make such payment, in *support of its credit, which would have been utterly ruined* by a default, but which, by this means, was so sustained, as not to drive it to the extremity of making all its purchases for cash: an extremity which it is not too much to say, would have practically brought the company's operations to a stand." The respondents further say, *the State has not the first lien on the road in Maryland or Pennsylvania, but there are $150,000, prior liens on the former,* and $700,000, prior liens on the latter;—that the State had no right to file the information, on the day it was filed, and objects that this court *hath no jurisdiction of the case made by the* information, and prays to have the benefit of the objection, as fully as it could have by any form of pleading.

The injunction granted, upon filing the bill, or information, was, on motion of the complainant, and with the consent of the Northern Central Railway Company, dissolved, without prejudice to the equity of the complainant, to move that the same shall be reinstated at any time thereafter, and the motion for a receiver was postponed. The complainant, afterwards, moved to reinstate the injunction and appoint a receiver, whereupon the respondents, the Northern Central Railway

27    v.18

Company, obtained leave to file a supplemental answer, which being filed, the application for an injunction and receiver, after argument, was overruled and denied.

The respondents (the appellees) insist :—

1st. That taking the bill and answer together, there was no default on the part of the company, at the time of the application.

2d. Throwing out of consideration the answer, there is no jurisdiction in equity to grant on the bill alone the injunction, or appoint a receiver.

3d. The case should be dismissed, for want of jurisdiction to entertain the appeal.

The last position, lying at the threshold, (and being decisive of the action of the court,) will be considered first.

The 21st and 25th sections of Article 5 of the Code, and the interpretation of the latter section, in the case of *Steigerwald vs. Winans*, 17 *Md. Rep.*, 62, have been referred to, in support of the motion to dismiss the appeal.  We are saved the necessity of examining these, by the special Act passed at the present session, entitled "An Act authorising the Court of Appeals to hear and determine, at the present term thereof, the appeal of the State of Maryland, on the information of the State of Maryland, against The Northern Central Railway Company."  It is too late to question the power of the Legislature, to confer on the Court of Appeals the right to hear appeals in special cases; but such a law, to be constitutional, must leave the judicial functions of the court untrammelled.  *Prout vs. Berry,* 2 *Gill,* 149.

The Act above cited, does not divest any right or infringe upon the judicial powers of the court.  It refers to it all such questions as may fairly be presented by the transcript, touching the construction and operation of the mortgage from the said company to the State, and the equity of the State to be relieved by the issuing of an injunction and appointing a receiver as prayed, and "the right of the company to off-sets or discounts as claimed in said cause."  All these questions were necessa-

rily involved in the decision of the court below; the enumeration of them neither enlarged nor restricted the powers of this court, nor invested it with original jurisdiction. The revision of the interlocutory orders and decrees affecting rights, of courts of original jurisdiction, is as much an appellate power, as the revision of their final decrees. The judgment of a court of law is the legal result of the facts admitted by the parties or found by the jury, and so too, the decree of a court of chancery is the result, according to principles of equity, arising from the facts found in the bill, answer, proceedings and proofs. Such is the acknowledged foundation of all final judgments and decrees; but interlocutory judgments and decrees affecting rights, must, so far as they go, have a similar basis; because no court of judicature can arbitrarily make a partial any more than a total disposition of the rights of things, and persons without such a foundation. The judge can go no further than to apply the rule to the case, or to pronounce the law upon the facts either partially or wholly. This application constitutes the judgment, and, when authorised by law, it is the duty of the appellate court to determine whether it is erroneously applied or pronounced. We have only to refer to the practice of the English Courts, and to the legislation on the subject of appeals from interlocutory orders, which is familiar to the profession, to furnish numerous examples.

The Act for an appeal in this case, being, in our judgment, constitutional, it devolves upon us to determine whether the bill and answers taken together, present a case for an injunction and receiver, and what property is subject to the complainant's lien. It is manifest from the Acts of Assembly above referred to, the bill, answers and exhibits, that in the consolidation of the several companies therein named, and the merger of the Baltimore and Susquehanna Rail Road Company in the Northern Central Railway Company, all the existing contracts of the Baltimore and Susquehanna Rail Road Company were to continue to bind the said company and its property,

and that they were adopted and assumed by the consolidated company; that in consideration of the release of the State of its mortgage or liens, on the property of the Baltimore and Susquehanna Rail Road Company, the Northern Central Railway Company was to mortgage the entire line of railroad, from Baltimore to Sunbury, with all the revenue and tolls thereof; that the consolidated company should covenant and bind itself to pay the annuity to the Treasury of Maryland in quarterly payments, and in addition to the usual covenants, the mortgage should contain a power to sell the interest of all parties to the same.

The bill alleges that the quarterly payments of the annuity are in arrear to the amount of $92,500; that the defendants are in possession of the road, realizing large profits over and above the cost and charge of working, managing and keeping the same in repair, and that the excess of profits has been more than sufficient to satisfy the State's annuity; that the defendant, in violation of its covenants, has applied from time to time, large sums of money, parcel of said excess of profits, to the payment and satisfaction of other debts junior in lien and obligation. The original and supplemental answers admit these allegations, but the latter introduces new matter not responsive to the bill, and which is not properly before us at this stage of the cause, as will be hereafter shown.

The respondents, in attempting to excuse their default on the plea of necessity, exhibit such a degree of extreme pecuniary pressure, as made it the imperious duty of the court to assert its legal rights in order to protect, if not to preserve, the large amount loaned to the respondents. If the condition of the company was such, that the misapplication of its pledged tolls and revenues, was necessary to a support of its credit, which would have been otherwise utterly ruined, or the operations of the company practically brought to a stand, the crisis was such, as to require a creditor having only a second lien on a part of the respondents' property, and a third and fourth on other parts, which lie beyond the jurisdiction of the State, to

be vigilant in the assertion of its rights, and appeal to the preventive and conservative powers of a court of equity for their protection.

The plea to the jurisdiction of the court below, is not tenable, either on the ground that the respondent's property lies in part in another State, or that its corporate existence is derived in part from a charter of another State. Corporations owing their corporate existence in part to the State of Maryland, and exercising their franchises therein, may be restrained here, from expending their funds for any other than corporate purposes any where. 2 *Bland*, 99, 147, 148. "Process issued by any court of this State, against a corporation holding and exercising franchises within this State, may be served upon the president or any director," or manager, or other officer of such corporation." 1 *Code, page* 540, *secs.* 99, 101, 102. It follows, that this body politic must, for the purposes of justice, be treated as a separate corporation by the courts of justice of each government, from which it derives its being, that is, as a domestic legal entity to the extent of the government under which it acts, and as a foreign corporation as regards the other sources of its existence.

The principles upon which the preventive powers of courts of equity are exercised, are too well known to need repetition. As a general rule, an injunction before final hearing, does not determine any right, does not necessarily prejudice any party; its province is to preserve the property or fund in controversy, and effect ultimate justice. The instances in which it has been resorted to, are innumerable. In a variety of cases, as for instance, patent cases or cases of waste or nuisance, the English courts are in the habit of exercising their preventive and conservative powers, for the purpose of preserving the subject of litigation, from waste, injury or total loss, pending the controversy. 1 *Bland*, 576 to 579, *Duvall vs. Waters.* "Where a *mortgagor in possession* is committing waste, a court of equity will restrain him, for as the whole estate is the security for the money advanced, the mortgagor ought not to be suffered to diminish it." *Eden on Injunctions*, 205.

State *vs.* Northern Central Railway Co.

In *Bronn vs. Stewart,* 1 *Md. Ch. Dec.,* 91, the late eminent Chancellor Johnson said, "the object of this bill, as we have seen, is not only to procure a sale of the property mortgaged for the payment of the claim of the complainant, but upon averment of the sale of a portion thereof, and *the apprehended disposition* of the residue by the defendant, and the consequent diminution or destruction of the security for the debt, the court was called upon to interpose its conservative power for the protection of the rights of the mortgagee. That a mortgagee, prior to the period when he may proceed to foreclose and sell the property mortgaged, may, by a bill in equity, with such averments as are contained in this bill, obtain an injunction as a preventive remedy against the apprehended danger, has been decided by the Court of Appeals. *Clagett vs. Salmon,* 5 *G. & J..* 314. But that court has not decided nor do I find it, so far as my examination has extended, expressly decided any where, that the court will put forth its authority in this way after the debt has become due, and consequently at a period when the mortgagee has a right to ask for a foreclosure and sale of the property. I do not, however, find the contrary to be decided, and it seems to me the administration of justice would be defective if the power invoked by this bill is denied by the court."

In general, where personal property, or the rents and profits of real estate in dispute, are in imminent danger of being wasted or lost, a receiver may be appointed to take care of it for the benefit of all concerned during the controversy. 1 *Bland,* 579, *Duvall vs. Waters.* Lord Hardwicke considered this power of appointment to be of great importance, and most beneficial tendency. 3 *Atk.,* 564. 2 *Story's Eq.,* sec. 831. It is a discretionary power exercised by the court, with as great utility to the subject as any authority which belongs to it, and is provisional only for the more speedy getting in of a party's estate and securing it for the benefit of such persons who shall appear to be entitled, and does not at all affect the right. *Danl. Ch. Pr.,* 1949, 1950.

Equity will appoint a receiver at the instance of parties beneficially interested, where *there is no fraud or spoliation,* if it can be satisfactorily established there is danger to the estate or fund, unless such step is taken. *Ibid.,*.1956.· 2 *Story's Eq.,* secs. 829, 830.

The leading cases in this State are, *Clark, et al., vs. Ridgely,* 1 *Md. Ch. Dec.,* 70; *Thompson vs. Diffenderfer, Ibid.,* 489, and *Blondheim vs. Moore,* 11 *Md. Rep.,* 374. In the first it was held, that "the authority and duty of the court to appoint or not to appoint a receiver, depends upon the question whether the property is or is not in danger, in the hands of the party who may at the time be in possession. It was said by the court in the case in 1 *Hopkins,* 422, a receiver is proper, if the fund is in danger, and *this principle reconciles* the cases found in the books." In the latter, all the cases are summed up, and this conclusion, among others, is deduced, "that fraud or imminent danger, if the immediate possession should not be taken by the court, must be clearly proved."

The complainant occupies the relation to the respondents in this case, of second and third incumbrancer; the subject of the mortgage, is not susceptible of occupation by the complainant or any of its agents, without the intervention of the courts of this State, or of Pennsylvania; the relief prayed, the sale of the railroad, cannot be effected without protracted litigation, and the tolls and revenues which are expressly pledged, are in the mean time diverted to the payment of debts of junior obligation and lien. Besides these obstacles to the ordinary remedies of a mortgagee, the greater part of the line of the railroad, lying without the State, the tolls and revenues, being claimed by adverse creditors or subject to various conflicting incumbrances, can only be collected and held by an officer of a court of equity, consistently with the rights of the parties litigant.

If the State courts have no jurisdiction over the subject of controversy, as contended by the respondents, beyond the limits

of the State, there can be little doubt of the necessity for the interposition of the courts, to the extent of their authority. In the language of the eminent chancellor above referred to, as to that portion of the property and franchises of the respondents, lying within the limits of this State, the defendant must be treated as a domestic, and as to those exterior, as a foreign, corporation. The ultimate security for the debt, is virtually reduced by the defences set up by the respondents, to the mere lien on the line of the railroad from Baltimore to the State's limit. The additional security covenanted to the complainant, and which was the motive and consideration for the release of the complainant's first lien, is repudiated by the respondents' action.

The consideration, that the authority of this court cannot extend beyond the territorial limits of the State, in the exercise of its remedial power, does not deter it from acting in a case within its acknowledged jurisdiction, to the verge of those limits. It will not entertain a doubt that the company, owing its corporate existence, in a large measure, to the State, will recognize, with promptness, the judicial authority of its courts.

The argument *"ab inconvenienti,"* if admitted, would effectually preclude the complainant and all other creditors, from seeking relief in the courts of this State, against corporations, whose property and franchises extend through more States than one. Our courts have frequently exercised jurisdiction in similar cases. See *Binney vs. The Canal Company*, 2 *Bland*, 99; *Ches. & Ohio Canal Company, vs. Balto. & Ohio Rail Road Company*, 4 *G. & J.*, 1.

That it is not against public policy to appoint a receiver over the property of corporations, is shown by the decisions in *Fripp vs. Chard Railway Company*, 21 *Eng. Law & Eq. Rep*, 53; *Covington Drawbridge Company vs. Shepherd*, 21 *How.*, 112, and *White Water Valley Canal Company vs. Villette*, 21 *How.*, 422, in which cases receivers were appointed.

The case of *Booth vs. Clark*, 17 *How.*, 330, shows only that the power of a receiver does not extend to the collec-

tion of *choses in action,* due out of the State in which the receiver was appointed. 6 *English Railway & Canal Cases,* 384, was a motion to commit a sheriff for contempt in seizing in execution, property in the possession of a receiver. The vice-chancellor expressed doubts whether such an appointment was not contrary to the policy of the law, but in the discussion of the motion, the Lord Chancellor refused to entertain the question of the propriety of the order appointing the receiver.

The mortgage conveying to the complainant the entire line of railroad belonging to the said company, from Baltimore to Sunbury in Pennsylvania, with *all the revenue or tolls thereof,* it becomes necessary to inquire, in order to determine the extent of the power and duties of the receiver, what passes under the mortgage deed. In *Seymour vs. The Canandaigua & Niagara Falls Rail Road Co.,* 25 *Barbour,* 309, 310, where a railroad company executed a mortgage upon its railroad *constructed and to be constructed,* a question arose whether the branch track from the main tract at Tonawanda, to the Niagara river, or to the docks on the banks of the river, passed. This branch was not laid out at the time of the original location or mortgage, and was not then projected or located. It was held to be covered by the mortgage as an incident to the principal subject of the grant, upon the maxim, that whoever grants a thing is supposed tacitly to grant that, without which the grant would be of no effect. "When a thing is granted, all the means to attain it, and all the fruits and effects of it, are granted also. It is a rule of law, that the incident passes, by the grant of the principal: whatever is essential to the use and enjoyment of the principal thing." *Brooms Maxims,* 198. *Shep. Touch.,* 89. *Broom,* 205. 4 *Kent,* 467. In the case of *Farmers Loan & Trust Company, vs. Hendrickson,* 25 *Barbour,* 484, the mortgages were of all the pieces or parcels of land, *forming the track or roadway of the company, &c.,* also of all *engines, tenders, cars, tools, &c.,* together with tolls, rent or income to be had or levied.

The mortgages were not filed according to the laws of New York, in any town-clerk's office, so as to make them liens on chattels. Certain judgment creditors issued executions, which were levied on locomotive engines, passenger cars, &c., constituting what is usually called the rolling stock of the company. The mortgagees sued the sheriff, claiming the rolling stock as fixtures. The court held :—"That railway cars are a necessary part of the entire establishment, without which it would be inoperative and valueless, there can, of course, be no doubt. * * * The railway is constructed expressly for the business to be done by the cars, and what evinces their essentiality in a strong point of view in this case is, that there can be *no tolls, (which are expressly mortgaged,)* without them. * * * If railway cars were used in any other place than upon the lands belonging to the company, or for any other purpose than in the transaction of its business, or were constructed in such shape and so extensively as to become subjects of general trade, or were not a necessary part of the entire establishment, I might consider myself as compelled, by the weight of authority, to decide, that as they are not physically annexed to what is usually denominated real estate, they must be deemed personal property; but as each and all of these characteristics or incidents are wanting, the considerations I have mentioned, or to which I have alluded, leading to an opposite conclusion, require us to determine that they are included as fixtures, or necessary incidents, in a conveyance of the real estate."

The tolls and revenues of the Northern Central Railway Company being expressly pledged by the mortgage in this case, we entirely concur with the opinion of the court in the case last quoted, that the mortgage covers not only the line of the road from Baltimore to Sunbury, but all the rolling stock and fixtures, whether movable or immovable, essential to the production of tolls and revenues.

The motion to reinstate the injunction, is equivalent to an application for an injunction after bill and answer filed, and

places the parties in the same attitude, as to the facts to be considered, as upon a motion to dissolve upon the coming in of an answer. In such cases, the court confines itself exclusively to the consideration of the case, or combination of facts, set forth in the bill, out of which the equity of the injunction arose and to the answer of the defendants to those facts. *Per Bland, Ch.,* in *Canal Co. vs. Rail Road Co.,* 4 *G. & J.,* 7. If the facts of the bill be admitted or not denied, or if new matter be set up by way of avoidance, the injunction will be continued. 12 *G. & J.,* 244. An answer will not support a matter set up in avoidance or discharge, where the matter of avoidance is a distinct fact; in such case the defence must be proved. 10 *G. & J.,* 324.

The supplemental answer does not anywhere positively and directly qualify the admissions contained in the original answer, but indirectly and argumentatively says, that it hath paid to the State, *since the* information was filed, large sums on account of the annuity mentioned in said information, and that with the exception of a trifling amount for interest, believed not to exceed two or three hundred dollars, and which it is ready at any moment to settle on ascertainment thereof, there is nothing whatever due by it to the State, for the instalment of the annuity, accrued before or since the information was filed, though the State claims a further amount, which this respondent denies to be justly claimable under the circumstances hereinafter detailed.

The respondents aver, that on the morning of the 20th of April 1861, a number of bridges upon the railway of, and belonging to, the respondents, within the limits of this State, were burned, and made impassable and destroyed;—the object was to render the communication between Baltimore and the Pennsylvania portion of the railway impracticable for passengers or freight. The agents, through whom *this* destruction was accomplished, were ordered and directed in the premises, by the Mayor and members of the Police of the City of Baltimore, and the Governor of the State was made aware of

such order and direction beforehand, and approved and sanc-tioned the same.    Subsequently thereto, by a formal Act pass-ed at the extra session, the General Assembly adopted and rat-ified the orders and directions aforesaid, and the acts of those, who, in obedience to such orders and directions, committed the aforementioned destruction and injuries.    The respond-ents claim that the State is responsible for the damages and waste, amounting to $117,609.63.

The new matters introduced by the respondents in their supplemental answer cannot, according to the decisions above cited, be considered on the motion to dissolve or reinstate the injunction.    They cannot be assumed to be true without proof; and if proved, they do not constitute such grounds of set-off as are available in courts of law or equity.    It is not denied, that in equity set-offs will be allowed where reason and justice require it, although not authorised by any statuto-ry enactment, (9 *Gill*, 89,) yet there is no principle of dis-count, set-off or recouper, known to this court, which would enable it to recognize, as a debt, obligation, or liability for damages liquidated or unliquidated, the amount claimed by the respondents in their supplemental answer.

Deeming the order of the circuit court for Baltimore city, passed on the 29th day of October 1861, erroneous, the same is reversed, with costs to the appellant; and it is further ordered and decreed, that this cause be remanded to the said court.

*Order reversed and cause remanded.*

(Decided January 30th, 1862.)

. BARTOL, J., dissented.