Boynton, J.
1. It was held, in Myres v. Smith, 29 Ohio St. 120, that a defendant in attachment can not ask or secure the discharge of the garnishee on the groijnd that his answer fails to show that he has property in his hands subject to garnishment. The plaintiff is not concluded by the answer of the garnishee. Where his disclosure is not satisfactory to the plaintiff, section 218 of the code authorizes the latter to proceed against him by action, and to recover a judgment for the amount of the property and credits of every kind of the defendant in the possession of the garnishee and “ for whatever amount he is shown to be indebted to the defendant.”
It follows, as a necessary consequence, that if the failure upon the part of the garnishee to disclose an indebtedness to the defendant, or the possession of property belonging to the latter, will not authorize the discharge of the garnishee, such failure constitutes no ground to discharge or vacate the attachment.
2. It was also alleged, as a ground for vacating the attachment, that the cause of action stated in the petition, and upon which the process of garnishment is founded, *542 did not accrue'to the plaintiff within six years prior to the commencement of the action. Whether the effect contended for would follow, if the fact were true, may be doubted.
No such defense has, as yet, been interposed. If the right to plead the statute in bar of the action should be waived by the company, it could not be made available to defeat a proceeding purely ancillary. But it is a-sufficient answer to the point urged to say that the fact that the action was barred, if true, was not made to appear.
The petition of the plaintiff was the only evidence offered in support of this ground of the motion; and the language, fairly interpreted, fails to show that the right to recover had been lost by' lapse of time.
3. The next objection relied on is that the claim of the plaintiff is not a debt or demand arising upon a contract, judgment, or decree, and, therefore, that proceedings in attachment will not lie. This conclusion is readily admitted, if the fact is as claimed. The ninth subdivision of section 191 of the civil code provides that an attachment shall not be granted on the ground that the-defendant is a foreign corporation, or a non-resident of this state, for any claim other than a debt or demand arising upon contract, judgment, or decree. The petition avers that the defendant below, at the time the plaintiff' below took passage upon its train, was a common carrier of passengers for hire and reward; and that, for a consideration in that behalf paid, the defendant promised and agreed to cai’ry her safely from Haseltine to Youngstown. It follows from this averment that the defendant was bound to furnish her suitable and proper means of access to the train upon which she . was to ride, and was bound to stop the train a sufficient length of time for her to get aboard. These are implied obligations and duties, growing out of the contract to carry. There is no doubt that the action might have been ■founded in tort upon the breach of the common-law duty to exercise due care to carry safely.
The plaintiff had her election to set out the promise, its *543 consideration and breach, and ask judgment (1 Arch. N. P. 124), or to set out facts which gave rise to a liability in tort, and pray judgment thereon. In Angel on Carriers, § 434, it is said “ that the action of assumpsit is the well-known and common remedy for the breach of a contract not under seal; and it not only lies upon all express contracts not under seal, but also in all cases where the law implies a contract. When a person undertakes any office, employment, trust, or duty, he thereby, in contemplation of law, impliedly contracts with those who employ him to perform that with which he is entrusted, with integrity, diligence, and skill; and if he fails to do so, it is a breach of contract for which a party may have his remedy, in most cases, by action of assumpsit, as well as by action on the case. Corbett v. Packington, 6 B. & C. 268. In 2 Greenleaf’s Evidence, § 208, the author, in speaking of the duties and liabilities of common carriers, whether by land or water, says': “ The action against a carrier, in any of these modes, is usually in assumpsit upon the contract.” While the form of the action does not materially affect or vary the character of the evidence necessary to establish the liability of the carrier, there is no doubt that the cause of action in the present case arises upon contract, within the meaning of the above provision of the code.
4. Another ground for the discharge of the attachment, and the one most confidently relied on by counsel for the plaintiff in error, is, that the garnishee, the Pennsylvania Company, being organized under the laws of Pennsylvania, is not liable to the process of garnishment provided by section 200 of the code (S. & S. 550). The claim is founded on what is alleged to be a correct interpretation of the language of that section ; and if the fact is that the garnishee is a non-resident of the state, exercising no corporate powers or functions within its limits, the conclusion would doubtless follow that the company is not within the class of persons or corporations that are made liable by that section to garnishee process. Squair v. Shea, 26 Ohio St. 645.
*544 But it is an admitted fact in the case that the Pennsylvania Company is operating in Ohio, the Ashtabula, Youngstown, and Pittsburg Railroad—an Ohio corporation. We assume its right to thus operate the same has been legally acquired. “ A corporation created by one state can only exercise its corporate franchises in another by the comity of the latter.” Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566. The right to operate a railroad and to receive fares and tolls is a franchise of a prerogative character, which no person can rightfully exercise without special grant from the legislature. The State v. Boston, C. & M. R. R. Co., 25 Vt. 438.
In McGregor v. Erie Ry. Co., 35 N. J. (Law) 97, it is said that “ the right to run the road is as much a part, of the franchise as the right to build it.”. In McGregor qui tam v. The Erie Ry. Co., ibid. 118, an action qui tarn was brought in New Jersey against the Erie Railway Company for taking unlawful tolls on parts of its lines within that state, and it was held that while the company was a foreign coi'poration, it was, at the same time, “ domestic to the full extent of the powers and franchises confirmed and invested in it, in New Jersey;” that “a corporation may have a two-fold organization, and be, so far as its relations to the state are concerned, both foreign and domestic. See State v. Northern Central Ry. Co., 18 Md. 193; Green’s Brice’s Ultra Vires, 546, et passim; Pennsylvania Railroad Co. v. Sly, 65 Penna. St. 205; Balt. and Ohio R. R. Co. v. Gallahue’s Adm’rs., 12 Gratt. 655; A. & W. Sprague v. The H., P. & F. R. R. Co., 5 R. I. 233.
By section 24 of the general incorporation act of 1852 as amended March 19, 1869 (66 Ohio L. 32), it is, among other things, provided, “ that any railroad company organized in pursuance of law, either within this or any other state, may lease or purchase any part or all of any railroad, the whole or a part of which is in this state, and constructed, owned, or leased by any other company, if said companies’ lines of said road are contiguous, or connected at a point either within or without this state, upon such *545 terms and conditions as may be agreed on between said companies respectively; or any two or more railroad companies whose lines are so connected, may enter into any arrangement for their common benefit, consistent with and calculated to promote the object for which they were created.” The assent of two-thirds of the stockholders of the Ohio companies is made requisite to the validity of any such purchase, lease, sub-letting, or arrangement. This enactment further provides that “ if any railroad company of another state shall lease a i-ailroad, the whole or a part of which is in this state, or make any arrangement for operating the same, as provided in this act, such part of said railroad as is within this state . . . shall be subject to all regulations and provisions of law governing railroads in this state,” . . . “ and a corporation of another state being the lessee of a railroad in this state, shall . . . beheld liable for any violation of the laws of this state, and may sue and be sued in all cases and for the same causes, and in the same manner as a corporation of this state might sue or be sued if operating its own road.” There can be little doubt in view of the entire provisions of this act, considered in connection with the subject-matter to which they relate and the important public interests which they affect, that it was the design of the legislature to enable actions to be maintained against the operating road, although deriving its corporate existence from the laws of another state, as fully and to the same extent as against a corporation within this state, operating its own road. The operating road is, to all intents and purposes, in the exercise of the corporate functions and franchises of the domestic corporation whose road is being so operated. And a wise public policy, in view of the important public interests involved, would hold it to the same degree of responsibility, require at its hands the performance of the same duties, and subject it to the same liabilities as are imposed on domestic corporations. In our judgment, for all purposes of proceedings in attachment and garnishment under the *546 provisions of the code above referred to, the Pennsylvania Company is, under the admitted facts, to be deemed and held a domestic corpotation. It follows from this conclusion, that service may be made in conformity with section 201, upon the agent therein named, in any county in which said operated road may be located.

Leave refused.