# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 16, 1916.

HERMAN D. WEHLAND AND CHRISTINA WEHLAND, HIS WIFE,

VS.

JACOB SPOERER AND CHARLES SPOERER, TRADING AS CARL SPOERER SONS COMPANY.

*L. P. Bolgiano* and *Herbert L. Grymes* for complainants.

*Roland R. Marchant* for defendants.

DAWKINS, J.—

This is a proceeding to restrain and prohibit the transfer to any third party of a note for $529.90 given by the plaintiffs to the defendants and to compel the return of the said note to the plaintiffs.

The plaintiffs allege that the said note was obtained by threats which engendered a fear in their minds which bereft them of their free will. The plaintiffs charge that the action of the defendants amounts to such a technical fraud as vitiates the whole transaction.

The defendants deny the material charge of the plaintiffs and allege that the note in question was freely and voluntarily given by the plaintiffs to save the defendants from loss by reason of the dealing with the plaintiffs' son.

The element of obligation upon which a contract may be enforced must be dependent upon the unrestrained and mutual assent of the parties and when one of the parties is constrained or caused to act involuntarily, he will not be bound by it. Fraud or duress or threat makes void a contract.

As a means of establishing a technical fraud artifice is none the less potent than force or actual threat or intimidation.

It is difficult in many cases to determine whether one executes a contract with a mind and will sufficiently free to make the act binding, but it must be determined by all the circumstances of the particular case from which a fair inference may be drawn. Before a contract is declared void for the reasons mentioned, it must be shown or made fairly inferrable that the minds of the contractor was so subdued by distress, apprehension or duress as to overpower and control the will.

18 Md. 208, Banks vs. Copeland, and cases there cited.

(It is not inconsistent with the exercise of undue influence that the paper was executed voluntarily.) Courts might be slow in setting aside a paper solemnly entered into, but it is a court's duty to invalidate it if brought about by deception.

110 Md. 508, Reck vs. Reck.

Courts should be cautious in disturbing a contract for any of the grounds above mentioned and the burden is on

the party setting up the same as a ground for interfering with a contract. Every presumption is in favor of the validity of the contract.

94 U. S. 276.

9 Cyc. 443.

38 Kansas, 62.

88 Md. 396, Shaffe vs. Cowden.

If no corroboration on either side, the assertion of one party is neutralized by the denial of the other. The burden is upon the plaintiff to prove his case.

88 Md., supra.

If the stopping of a threatened prosecution enters into the consideration of a note it becomes invalid.

106 Mass. 291, Taylor vs. Jacques.

The many cases cited at the hearing confirm the principles above stated.

Now, what are the facts in this case? A grown son of the plaintiffs had failed in business. He had bought goods from the defendants for the company or firm of which he was a member and had given notes to the defendants representing the amount of the indebtedness to them. Default had occurred or was about to occur on said notes. A petition in bankruptcy was about to be filed against the son's company. This was known by the defendants. The defendants heard that one of the creditors was about to have the son arrested on account of some business misconduct. The defendant and his attorney as a wise business move went to the home of the plaintiffs in the late afternoon to get the account adjusted (as was their right to do), taking a blank note with them. Mr. Hayden, the counsel, was not known to the plaintiffs. He was introduced by the defendant as a friend. When Mr. Wehland came home he was quietly apprised of the fact as to the probable arrest of the son and of the defendants' own power to prosecute the son for failure to account for consigned goods. A discussion ensued between all of the parties concerned. The son was not at the home. Counsel for the defendants seem to have been brought into the discussion only to a limited extent. The defendants did not threaten to prosecute, but offered, if their debt was arranged for, that they would undertake to stop the arrest by the other party of the son and would go the latter's bail if he should

be arrested. An offer to go to the bank the next morning and draw the money to pay what the son owed to the defendants was rejected on the ground that it would be too late to stop the supposed imminent criminal proceedings.

Wehland and his wife were naturally excited and nervous, fearing the arrest of their son in the morning or at any time and wishing to do anything to prevent such a disgrace. The plaintiffs were old people on a farm with the boy supposed to be in danger of criminal prosecution in the city. The defendants were shrewd business men. They had with them able and learned counsel. Under such circumstances the note was signed and the notes of the son's company were sent to the plaintiffs by the daughter (who worked for the defendants) the next day. So far as is disclosed no arrest of the son was ever made or even contemplated and nothing was done or was intended to be done by the defendants to prevent it. The notes of the son's company are apparently of no value. A protest was soon made by the plaintiffs against the validity of the note, and a demand was made for its return and an attempt was made to return to the defendants the other notes after the lapse of some days.

There was a confirmation of some sort in January of the note and an expressed willingness after a heated discussion of the parties to pay without further consideration save the desire not to get out of the obligation assumed, which under the circumstances would not seem to have any effect upon the original transaction. The facts as stated are substantially undisputed, so that there is no question to be considered of neutralization of testimony.

Applying the facts as above briefly stated to the law as outlined, it seems to me that there was no actual legal consideration for the note; that it was given to stop a prosecution actually thought to be intended; that it was given to stop the enforcement of the criminal law; that it was given purely to stop the threatened or supposed disgrace that the said prosecution would entail; that the parents were bereft of such free will as would enable them to act in a real voluntary manner. The defendants had every

right to collect their debt if they could do it. It would be a very proper thing for the parents to help their son out of his difficulties and pay his debts if they are of the mind to do it. Whilst a note given under such circumstances would be proper to be voluntarily paid, yet notwithstanding this and the fact that I do not believe the defendants and their counsel had any idea of proceeding in any way other than in a perfectly proper one, I can not feel that the note was given in such a way and under such circumstances as would justify its enforcement, unless the plaintiffs feel that they, after considering all the facts laid before them and in their own hearts, should want to pay it.

I am, therefore, prepared to sign a decree granting the relief sought in the bill.