ZECHARIAH CHAFEE *et al.* vs. THE QUIDNICK COMPANY *et als.*

S. made a conveyance to C. of certain property in trust, upon special trust to secure the debts of S., and subsequently transferred to C. his stock in the Q. Co. as "pledge and collateral security" to secure the performance by S. of the conditions of the trust deed.

After breach in the conditions of the trust deed C. filed a bill in equity, and asked that a receiver be appointed of the Q. Co., charging that the property of the company was managed and controlled by one not a stockholder, whose control was adverse to the interests of the creditors, whose management was impairing the value of the property, and through whom it had become impracticable for C. to sell the stock pledged for any sum commensurate with its just value.

C. held in pledge nearly all the stock of the Q. Co., the balance of the stock being held by F. as administrator.

*Held*, that C., though not technically a creditor, was, as pledgee of a majority of the stock for the benefit of the S. creditors, to be considered as an equitable creditor, and as such was entitled to the protection of the court.

*Held,* further, that the thing in litigation was in the view of equity not the stock itself but the property of the Q. Co. represented by the stock.

*Held,* further, that C. as trustee and F. as administrator represented the whole stock of the corporation.

*Held,* further, that the bill showed a case within the equitable jurisdiction of the court. CARPENTER, J., dissenting.

*Held,* further, that on the evidence submitted no case was made out for the intervention of the court.

BILL IN EQUITY to establish a lien, for an account and foreclosure, and for an injunction. On motion for the appointment of a receiver of the Quidnick Company's estate.

The former proceedings in this case are reported in 13 R. I. 442 *sq.* The circumstances of the present hearing are detailed in the concurring opinion of CARPENTER, J.

*February* 3, 1883. TILLINGHAST, J. In determining the particular question now before the court, although a merely interlocutory motion, it is proper to consider and have in mind the entire situation of the parties before us.

That situation in brief is this: In November, 1873, the A. & W. Sprague Manufacturing Company, A. & W. Sprague, and Amasa Sprague, William Sprague, Fanny Sprague, and Mary Sprague, individually, all defendants in this bill, had become financially embarrassed and were unable to meet their liabilities.

Wishing to fund their indebtedness, and at the same time to preserve intact their vast manufacturing properties and to continue their business, that being deemed for the best interest of both creditors and debtors, they made and executed to the complainant, Zechariah Chafee, a trust mortgage deed of all their property and estate as security for the payment of their debts, excepting from said conveyance all shares of capital stock in any and every corporation wherever located, belonging to any or either of the grantors in said trust mortgage deed, but at the same time and in the same instrument agreeing to transfer all of said stock to said Chafee, upon his request in writing, " by way of pledge and collateral security, to secure the performance of the conditions of this instrument."

In pursuance of this stipulation, request was thereafter promptly made, and all of the capital stock of the grantors in the Quidnick Company was transferred to said Chafee by way of collateral security to said trust mortgage deed, the equity of redemption in

said stock only remaining in the grantors thereof, which said equity of redemption was immediately thereafterwards transferred as follows : Amasa Sprague, William Sprague, Mary Sprague, and the A. & W. Sprague Manufacturing Company each transferred to Fanny Sprague their respective shares for the equal benefit of their respective creditors, and said Fanny Sprague in like manner transferred her remaining right in her shares to said Mary Sprague in trust for the equal benefit of all her creditors.

By subsequent deeds of assignment Amasa Sprague and William Sprague respectively conveyed all of their individual estate and property, not exempt by law, to said Zechariah Chafee in trust for the benefit of their creditors.

The amount of stock of the Quidnick Company thus transferred to Chafee, as collateral to the trust mortgage deed, was 4,022 shares, which he still holds for the purposes specified in the deed and transfer.

The entire number of outstanding shares of the capital stock of said Quidnick Company is 4,349 ; so that said complainant Chafee holds all but 327 shares of the entire amount for the benefit of creditors under the trust deed.

The bill alleges that Claudius B. Farnsworth, administrator of the estate of Edwin Hoyt, owns said 327 shares, so that upon the face of the bill the entire capital stock of the debt corporation is represented by Chafee, trustee, and Farnsworth, administrator. The conditions of the trust mortgage deed aforesaid have long since been broken. Both the interest and principal of the extension notes issued in pursuance of said deed are long overdue and unpaid.

The property in the hands of the trustee, exclusive of the Quidnick stock held as collateral under the deed, is wholly insufficient to pay the indebtedness, and the trustee has brought his bill in equity, which is now pending in this court, to foreclose said stock in order that he may realize thereon for the benefit of the long delayed creditors.

The trustee is bound to sell this stock to the best possible advantage. The debtors as well as the creditors are entitled to the largest possible benefit which can be reaped from the sale of this security. And it is just here that, as it is claimed, the practical

difficulty arises. The complainant Chafee, trustee, holds the beneficial interest in all of the stock of the Quidnick Company, excepting said 327 shares held by Farnsworth, administrator, who represents the creditors of Hoyt, with authority to sell the same ; but one not a stockholder, though holding the office of President, namely, William Sprague, one of the defendants, who, the complainant avers, is adversary to the interests of the creditors, is in the actual possession of the property which that stock represents.

Whereupon, the complainant avers and charges that as a result of this fact and of other facts set forth in the bill, the value of the stock held by him for the purposes set forth in said trust deed " is rendered uncertain, is being daily reduced and deteriorated, and that the sale thereof by him under and pursuant to his said trusts is hindered and rendered impracticable for any sum at all commensurate with the just value of the same."

He also makes said Farnsworth, administrator, a party defendant to this bill, and avers that the value of the stock held by him is also affected in the same manner as that held by the complainant. Farnsworth makes answer admitting the facts as alleged, and joins in the prayer for relief.

Upon the sworn allegations and averments set forth in the bill, the complainants recently filed a motion for the appointment of a receiver *pendente lite*, to take possession of all the property and estate of the defendant corporation, the Quidnick Company, and hold and manage the same under the authority and direction of the court.

Upon the hearing of the parties upon the bill as it then stood, and without any denial of the averments therein set forth, the court granted the motion and appointed C. B. Farnsworth receiver.

The particular motion now before us is that made by the Quidnick Company, as represented by those holding the legal title to a majority of the stock, to vacate the order and decree passed in pursuance to said motion, on the grounds, amongst others, that the court is without jurisdiction in the premises, upon the facts stated in the original bill; that the complainant Chafee is not a creditor of the company ; that he is not a stockholder ; that he has no equity to a receiver, and for other reasons. And first as to

jurisdiction. The defendant says that "so far as the order proceeded upon the original bill, and the application of Chafee, it was improvidently allowed for want of jurisdiction in the court upon the facts stated to grant it."

But the order did not proceed upon the original bill alone. It proceeded upon the original bill as amended by the supplemental bill, which was duly incorporated into the original under a provision of our statutes, and therefore became, to all intents and purposes, a substantive part thereof.

The failure to state the specific grounds entitling the complainants to the relief prayed for, to which the defendant claims that the original bill is obnoxious, is fully remedied in the amended bill, which is now properly before us, by setting forth those grounds with great particularity. The amended bill also shows that the 327 shares of stock owned by the representative of the Hoyt heirs are now properly before the court.

Does the bill then, as it now stands, *primâ facie* set forth a case within the jurisdiction of the court? We think it does. It charges "that since the filing of the bill the defendant William Sprague, and others acting by his direction and for him, have been and are in the possession and control of all the real estate, mills, and property of the Quidnick Company, and are running the same for his or their own benefit, without paying the Quidnick Company any rent ; that he or they are renting and receiving rent for tenement houses and other property of the company ; and that he is allowing the property to deteriorate by neglect and want of care. And all this while the money of the Quidnick Company, by the custodian of its personal property, is paying the taxes and insurance upon the entire property.

The bill also charges that as a result of the facts set forth the value of the stock held by the complainant Chafee in his said capacity is rendered uncertain, and is being reduced and deteriorated, and that the sale thereof by him is hindered and rendered impracticable for any sum at all commensurate with its true value, &c., as before stated.

Is the complainant Chafee in a position, upon the face of the bill, which entitles him to ask for this interference of the court?

The defendant argues that he is not : *first,* because he is not a

creditor of the defendant corporation; and *second,* because he is not the owner of the stock held by him.

As to the first, although it is true that Chafee is not a creditor technically, yet he is one equitably, and, as such, entitled upon a proper showing to the assistance of the Court of Equity by the appointment of a receiver. As pledgee of a large majority of the stock, he may be regarded as an equitable creditor having an interest in the property of the company, which, in connection with Farnsworth, who represents other creditors and the balance of the stock, he is entitled to have protected from alienation and depletion, for the reason that, not being a stockholder, he cannot protect it by his vote, and Farnsworth, holding only a minority of the shares of stock, is powerless as against the majority.

And as to the second point, although it is true that the complainant is not the owner of the legal title to the stock, he is the owner of the equitable title thereto, which, together with the fact that the owner of the balance of the stock joins with him in the prayer for relief, thereby representing the entire stock of the corporation, is *primâ facie* sufficient to give him a standing in court.

The rule as laid down by Kerr on Receivers, pp. 7, 8, is that " If it appears to the court that the plaintiff has established a good *primâ facie* equitable title, and that the property, the subject matter of the suit, is in danger if left in the possession of the party against whom the receiver is prayed until the hearing, or at least that there is reason to apprehend that the plaintiff will be in a worse situation if the appointment of a receiver be delayed, the appointment of a receiver is almost a matter of course."

Said Bowie, C. J., in *State* v. *Northern Central Railway Co.* 18 Md. 193, 214: " In general, where personal property, or the rents and profits of real estate in dispute are in imminent danger of being wasted or lost, a receiver may be appointed to take care of it for the benefit of all concerned during the controversy. Lord Hardwicke considered this power of appointment to be of great importance and most beneficial tendency. It is a discretionary power exercised by the court, with as great utility to the subject as any authority which belongs to it, and is provisional only for the more speedy getting in of a party's estate and securing it for the benefit of such persons who shall appear to be entitled ; and

does not at all affect the right. Equity will appoint a receiver at the instance of parties beneficially interested where *there is no fraud or spoliation,* if it can be satisfactorily established there is danger to the estate or fund, unless such step is taken." In the leading case of *Clark et al.* v. *Ridgely,* 1 Md. Ch. Decis. 70, quoted by Judge Bowie in the case just cited, it is laid down, p. 71, that " the authority and duty of the court to appoint or not to appoint a receiver depends upon the question whether the property is or is not in danger in the hands of the party who may at the time be in possession." And see, also, *Davis* v. *Duke of Marlborough,* 2 Swans. 145, 146, and 2 Daniell Chanc. Plead. & Pract. 1716, as to cases in which receivers are granted.

Having therefore come to the conclusion that the complainant Chafee is an equitable stockholder as well as creditor, it is unnecessary to consider the point made by the defendants that as stockholder he has no equity to a receiver.

But the defendant further argues that the " *thing in litigation* " is the stock claimed by Chafee, and not the corporate property itself, and that therefore no receiver can be appointed in any event except of the stock. It seems to us that this is taking too narrow and technical a view of the matter before us. The stock which is held as collateral by Chafee is the mere representative of the property which is behind it. It stands for the property. It is utterly worthless without it. The stock cannot be sold for anything like its real value unless the purchasers can be reasonably assured that, by purchasing the stock, they will also obtain the control, use, and occupation of that which it represents without further litigation. Now if the creditors, together with the Hoyt heirs, represented by Farnsworth, administrator, practically own all of this stock by having the entire beneficial interest therein, then they also practically own the property which that stock represents, and are entitled in equity and good conscience to the benefit and enjoyment thereof.

*Upon the face of the bill,* Chafee, trustee, as representing all of the vast body of these creditors, together with Farnsworth, administrator, representing the Hoyt heirs, do own the entire beneficial interest, and so far as the 327 shares represented by said Farnsworth, administrator, are concerned, the legal interest in and

to every share of the stock of the Quidnick Company. But while thus owning it, the complainants aver that they are entirely and absolutely deprived of all the use and benefit accruing therefrom, because another person is in the actual possession and enjoyment of the entire property which that stock represents, managing and running it for his own private benefit, or for the benefit of those whom he may represent, without making any returns whatsoever to the true owners.

So that, although the technical thing in controversy is the capital stock of the Quidnick Company, the *real* thing in controversy is the property of the Quidnick Company which that stock represents, and without which it is of no avail.

This was substantially the light in which we viewed the case as presented at the first hearing.

Upon the motion now before us, however, the case assumes a very different aspect from the facts which appear by the affidavit of Governor Sprague, which sets forth that after the decree of September 10, 1881, in this case, appointing Claudius B. Farnsworth custodian of the personal estate of the Quidnick Company, he, Governor Sprague, " entered into a contract with the Quidnick Company, as trustee for certain persons who agreed to and did furnish funds to start up and put the mills in operation ; that said contract was to continue in force until the controversies, in which the said company was interested, were judicially determined." " That under said contract he entered into the possession and commenced the operation of the mills, and has been at great expense in collecting and filling the mills with help, and has expended large sums of money in accumulating stock, and in bringing the business operations of the mills into their present prosperous condition ; that under his operations the mill property is in better condition to day than it has been for the last ten years, large sums of money having been expended by him in making such repairs as were necessary to put the mills in proper running condition ; that the money so expended has been paid by him out of the funds of the persons for whom he is acting as trustee, and out of the business operations of the mills ; that the mill property will not deteriorate so much with the mills in operation as if they were idle ; that the mills are being run for

the benefit of the stockholders, after payment of expenses incidental to the running of the mills, and for the use of the money advanced to put the mills in operation." The complainants offered no evidence to controvert these allegations, which are a complete answer, if true, to the averments of the bill upon which they mainly rely, and must rely, for the appointment of a receiver *pendente lite*, namely, that the property is being wasted by negligence and want of proper care; that it is daily deteriorating in value, and also that it is being managed by a stranger who is not acting in the interest of the Quidnick Company.

Upon the present state of the proof, therefore, no case is made out for the appointment of a receiver, or for the retaining of the one already appointed at the first hearing.

Furthermore, upon a more careful study of the bill before us, we are of opinion that the petition for a receiver is not ancillary to any relief sought to be obtained under the various prayers in the bill. The prayer for the receiver in the bill is without foundation and without meaning. There is no prayer for a foreclosure of the stock, or for the winding up of the corporation, nor is there any for the application of the property of the company as such to the payment of debts. So that, as the case now stands, the appointment of a receiver on final hearing would, so far as aught now appears, practically be the appointment of a receiver *in perpetuum*. For no final decree which can be properly made under the bill as now framed could dispose either of the stock of the Quidnick Company, or of the property which that stock represents, and thus relieve and discharge a receiver thereof who should now be appointed.

For these reasons, therefore, we are of opinion that the defendants' motion should be granted, and the decree vacated.

CARPENTER, J., concurring. In view of the fact that the decisions of the court heretofore made in this matter have been announced orally, and without assignment of reasons, and inasmuch as my opinion of the merits of the pending motion differs in some respects from that of the majority of the court, I think it useful, not only to state the reasons which constrain me, but also briefly to review the history of this motion up to the present time.

This cause came on to be heard January 20, 1883, on motion for an interlocutory decree appointing a receiver of the Quidnick Company, one of the respondents. Before the hearing was begun a request and assent was made by all parties that all the justices of the court should hear the motion, although it was understood that two of our number were disqualified by reason of having an interest in the event of the suit. To this request we all assented and the hearing proceeded accordingly. The matter was heard upon the evidence solely of the bill of complaint and the affidavit verifying the same; and was argued mainly upon the question whether or not the possession and management of the property of the respondent corporation by the officers thereof was to the disadvantage of the complainants, who claim to be interested in a very large number of shares of the capital stock, and without reference to the question of the general equity of the bill. A decree appointing Mr. Farnsworth as receiver was thereupon passed in consequence of the opinion of the majority of the court; one of the justices, however, finding himself then unable to see in the bill any equity upon which such a decree could properly be based.

When the parties requested that this motion should be heard by all the members of the court, there was undoubtedly implied a promise between themselves that they, and each of them, would undertake the execution of such decision as might be made, and would supply, by their own voluntary concessions, any lack of legal force which might exist, or be supposed to exist, in the decree which might be made. It is not, perhaps, too much to say, that all the justices had the right to rely upon the faithful performance of this implied agreement, since they were requested, presumably for the advantage of the parties, to place themselves in the position of making a decree whose execution might depend solely on the will of the persons against whom it should be directed.

This agreement, so far as we know, was carried out until January 27, when counsel for the Quidnick Company moved before the whole court to dissolve the decree: on the ground, *first*, that it was invalid because made by justices not qualified thereto; and *second*, that it was not justified by the merits of the case; and they at

the same time withdrew their request that the disqualified justices should sit in the hearing of the cause. These justices then withdrew.

On consideration of the cause, as it then stood, it seemed right to all of us who remained that the respondents should then be heard, if they desired, upon the merits of the application, but that they should not be permitted to place themselves in any different position from that required by their own agreement, or to gain any advantage by attacking the validity of the tribunal which they had, in some sort, established by their own act. Decrees were therefore entered *pro formâ*, vacating the decree made on the 20th of January, and making another order in the same words.

The hearing then proceeded on the motion of the Quidnick Company to vacate the order just entered appointing a receiver. On the hearing of that motion the complainants relied, as before, entirely on the allegations and formal verification of the bill.

The bill, as modified or sought to be modified by the amendments and supplement, is brought by Zechariah Chafee and other persons describing themselves as "creditors of the A. & W. Sprague Manufacturing Company, and of the other defendants hereinafter named, as hereinafter stated," and who sue as well for all other like creditors, against the Quidnick Company, the A. & W. Sprague Manufacturing Company, Fanny Sprague, Mary Sprague, Amasa Sprague, William Sprague, Benjamin G. Chace, and Claudius B. Farnsworth. The bill alleges that on the first day of November, 1873, the A. & W. Sprague Manufacturing Company was insolvent, and that the respondents Sprague were stockholders therein and liable for the debts thereof; that they and their said company held 4,022 shares of the stock of the Quidnick Company; that all the remaining shares of said company now outstanding numbered 327, and were then of Edwin Hoyt, and are now of the respondent Farnsworth, as administrator on his estate; that on the day aforesaid the Sprague Company and the respondents Sprague conveyed to Chafee all their estates except stocks in corporations, to secure the payment of certain notes issued by the company for the purpose of retiring their obligations; that immediately thereafter, and in pursuance of an agreement contained in the deed of conveyance, the grantors therein trans-

ferred to Chafee, on the books of the Quidnick Company, all their shares in that company, " by way of pledge and collateral security . . . to secure the " performance of the conditions " of said deed; that thereafter the equity of redemption in said shares was transferred to Fanny Sprague and Mary Sprague in trust for the benefit of the creditors of all said parties; that all the stock so pledged will be needed for payment of the debts so secured; that William Sprague has wrongfully taken into his possession, and he or some of the respondents retain the stock transfer book and record book of the Quidnick Company; that the creditors secured by the deed are the same as those secured by the transfers above referred to; that many persons, including the Quidnick Company, accepted the notes issued in pursuance of said deed, and that the complainants other than Chafee are holders of such notes; that thereafter the Sprague Company and the respondents Sprague made to Chafee general assignments for creditors; that Chafee was elected treasurer of the Quidnick Company, William Sprague being president; that there was made by the Quidnick Company and the Sprague Company an agreement in writing, which is fully set forth, and whereby the Quidnick Company was to stock the Sprague mills and print works, sell the goods, and pay the proceeds, over advances, charges, and commissions, to the Sprague Company, which agreement was to terminate at the expiration of thirty days' notice from either party; that under said agreement the mills and print works were run until July 21, 1881, when Chafee was notified by William Sprague as president that the office of treasurer of the Quidnick Company had been declared vacant, and by J. O. Brigham as secretary that the company had voted to terminate the contract above referred to, and that the respondent Chace had been elected treasurer; that Chafee received no notice of the meetings at which such votes were passed, and the complainant believes " the estate of Edwin Hoyt " was not so notified; that Brigham is not secretary of the Quidnick Company; that such meetings were not properly notified, and the proceedings thereat were void and were fraudulently contrived by the respondents Sprague and their counsel, in order to impede Chafee in the execution of his duty to sell the trust property for the purpose of distributing the proceeds thereof among the creditors; that Chafee,

under advice of the creditors, advertised for sale certain parts of said trust property, not including the Quidnick stock; that he afterwards, though claiming such offer to be unnecessary, offered said stock for sale to the company under the provisions of the charter at the price of $300 a share; that such offer was accepted in writing signed by said Brigham as secretary, but payment for the same was not made at the time appointed in writing for that purpose by Chafee, whereupon Chafee advertised the same for sale by auction; that said Spragues made sundry propositions to Chafee for a full settlement with the creditors, which were declined, whereupon William Sprague threatened that he would do all in his power, by litigation and otherwise, to embarrass the sales of the trust estate; that one John Rooney, of Brooklyn, alleged to be a person of small financial ability, offered to purchase all the trust estate upon terms stated in his offer, which is believed to be in the handwriting of William Sprague's counsel, and of which offer, as the bill alleges, "your orators, of course, took no notice whatever;" that Thomas A. Doyle, the brother in law of William Sprague, made in writing to Nelson W. Aldrich, one of the complainants, a proposition for the settlement of the indebtedness of the Spragues, which is fully set forth in the bill; that the respondents Sprague, "acting in collusion with their legal advisers," and for the purpose of impeding the sales of the trust estates, brought actions at law in the name of the Quidnick Company against the Sprague Company, wherein they attached the trust estates, and also filed in this court two bills in equity praying for injunctions against sales of the trust estates, and thereupon applied for and obtained injunctions *ex parte* and without notice to Chafee, although he and his counsel were easily accessible; that thereby and by reason of the fact that the respondents had widely notified the removal of Chafee as treasurer, he was obliged to stop the business of manufacturing, to the great loss of the trust estate; that Fanny Sprague has commenced a vexatious suit against the Quidnick Company by attachment; that William Sprague and Chace have "pretendedly appointed one Henry T. Sisson as so called agent or manager" of the business of the Quidnick Company, "and under the color and pretence of said Fanny Sprague attachment the said Henry T. Sisson, as your orators

believe, accompanied by said William Sprague and Benjamin G.
Chace, have recently taken forcible and armed possession of said
mills, ejecting the former superintendents therefrom, and substitut-
ing others of their own appointment in their stead, are now threat-
ening and preparing to run said mills on their own account and for
their own benefit, regardless of the claims of creditors aforesaid
upon the same, and have already, as your orators are informed and
believe, got into their hands moneys and other property of said
company, which they have converted into money and applied to
their own uses, business, and affairs, and have been and are seeking
by other modes to get the estates and property of said company
into their hands and possession; . . . that since the filing of said
bill the said William Sprague, and others acting by his direction
and for him, have been and still are in the possession and control
of all the real estate, mills, machinery, and manufacturing prop-
erty of said Quidnick Company, and are running the same for his
or their own benefit, without paying the said Quidnick Company
or any one on behalf of said company any rent for use and occu-
pation of said premises ; that he or they are renting and receiving
rent for large numbers of tenement houses and other property of
said company ; and further your orators believe, and on belief aver,
that the said Sprague and his agents are allowing the said estate
and property to deteriorate by neglect and want of care and re-
pairs; that the said Quidnick Company, while receiving no rent,
income, or benefit from its said property as aforesaid, has paid and
is paying the taxes and insurance on all of said property out of a
fund held for its benefit by Claudius B. Farnsworth, receiver of
said personal property, appointed in this original suit ; " that the
respondents Spragues and Chace have only a nominal interest in
the stock of the Quidnick Company, and that they are insolvent
and irresponsible.

The bill prays: *first,* for an answer; *second,* "that a receiver may
be appointed of all the estate and property of said Quidnick Com-
pany, to take, hold, and manage the same under the authority and
direction of this court ; " *third,* that the respondents Sprague and
Chace be enjoined from meddling with or attaching the property
of the company or voting on said stock, and that they be ordered
to deliver to the receiver or to impound the books and papers of

the company; *fourth*, that the respondents be enjoined from prosecuting their actions at law against the Sprague Company, and to dissolve their attachments; *fifth*, that Fanny Sprague be enjoined from prosecuting her action at law against the Quidnick Company or to dissolve her attachment; *sixth*, that the respondents be enjoined from meddling with or attaching the Sprague trust estates; and *seventh*, for general relief.

On the motion to vacate the decree, the respondent, the Quidnick Company, causes to be read the affidavit of William Sprague, who deposes in substance that the property of the company is in good condition and well cared for, and that the mills are at present operated by himself with funds furnished to him by certain persons, whose names do not appear, under a contract that all the profits of the business if any there be, over expenses and interest for the use of money, shall go to the use of the stockholders of the company. The affidavit of Appleton Sturgis is also read, wherein he claims to be the owner of the Edwin Hoyt stock, by virtue of purchase from Charles G. Francklyn, who is executor of the will of Hoyt appointed in New York. In the view I take of the case it is unnecessary to consider this last affidavit.

The question, then, is whether here is any case upon which the decree appointing a receiver should have been made, or upon which it should longer stand. I am clearly of the opinion that upon the allegations of the bill alone there is no such ground. In thus concluding that a decree already made ought to be vacated, it has been necessary to review, not only the ground on which alone the complainants contend that the decree should stand, but also all other considerations, so far as I am able, by which, in any view, it may be defended.

The frame of the bill suggests that the complainants may claim as creditors. They do not allege themselves creditors of the company, but they do say that they are creditors of those who hold nearly the whole of the stock, and hence are substantially entitled to apply, indirectly at least, nearly the whole property of the company to the payment of their debts. To this suggestion three answers, among others, may be made : *first*, the property out of which they are entitled to be paid, and against which the decree should go under a creditor's bill, is the stock of the company and not the

property of the company; *second*, they have a sufficient remedy by foreclosure of their pledge, without an appeal to the extraordinary remedy here sought to be maintained, and the remedy by foreclosure has certainly been open to them without objection on any account since July, 1881, when Chafee received notice of the vote removing him from the office of treasurer; *third*, the relief here asked is not ancillary to any relief prayed in the bill by way of foreclosure of the pledge against the stock, or, even if that were possible, against the company's property, so that the appointment of the receiver is not even a preliminary step toward the payment of the creditors. A bill which does not pray the application of the property of the debtor to the payment of debts can hardly be maintained as a creditor's bill.

But the complainants may be considered, in another view, to claim as stockholders of the company. In this view it is to be noticed that the respondent Farnsworth joins in the application for the appointment of a receiver. Assuming, on the one hand, that those who moved for this decree are all the stockholders; and disregarding, as only nominal, the title of the Spragues to the stock held by them; or considering, on the other hand, that this application was made by the beneficial owners of part of the stock joining with the owner of the remainder against persons who hold a bare legal title to a controlling share; in either view, the case presented is that of a corporation embarrassed in its business and threatened with disaster in consequence of the wrongful action of those who have held that bare legal title, and misused their power thereunder for eighteen months, to the knowledge of all the complainants, without any application to the court for the purpose of enforcing the pledge thereon, which was forfeited six years ago, and since has been held in trust for creditors by the chief complainant in this bill. I do not think such a case appeals strongly to the court for the application of this most stringent remedy.

But the complainants in their argument concede that they cannot maintain the propriety of this decree by reason of any position which they occupy, either as creditors or as stockholders, and they claim that the decree was properly made on consideration of certain facts which they state as follows: They say that immediately after the delivery of the Sprague trust conveyances there was

made a certain contract, whether orally or in writing they do not say, between the Quidnick Company, the A. & W. Sprague Manufacturing Company, and Chafee, acting on behalf of the Sprague creditors, whereby the Quidnick Company, in consideration that the creditors would accept the trust notes, so called, and thereby extend the time for payment of their debts, agreed with the Sprague Company and Chafee that they, the Quidnick Company, for the purpose of securing the best possible settlement of the Sprague debts, would furnish means to operate the Sprague mills so long as such operation should be necessary or convenient for that purpose ; and that under the provisions of that contract, and as among the things necessary to be done for the purpose of carrying that contract into full effect, Chafee was elected treasurer of the Quidnick Company, and the written agreement, which is set out in the bill, was made between the Quidnick Company and the Sprague Company. The complainants further say that the respondents Sprague, although they as well as all the other stockholders assented to and approved this contract, have caused votes to be passed by the company violating this agreement by expelling Chafee from his office, and by terminating the written agreement for stocking the mills.

To this claim of the complainants there are, as it seems to me, several sufficient answers. In the first place, the contract which is said to have been broken is not alleged in the bill, and no proof is tendered that it was ever made. Assuming, however, as the complainants insist we should, that we may act on the common knowledge that such a contract does exist, and assuming further that there is such common knowledge, although it has never come to my ears until detailed by the counsel in this hearing, there are still objections which seem to me conclusive against the propriety of this decree. The remedy by action at law for breach of contracts of this nature is ordinarily thought to be the only remedy ; the complainants do not pray specific performance of the contract, and if they did it could hardly be granted ; and so far as I can see they can have no valuable remedy under this bill for the injury they say they have suffered, unless their prayers be construed to be in substance an application for the appointment of an officer who shall, under direction of the court, specifically perform the

contract in the behalf and at the cost of the Quidnick Company. I am not willing to share the responsibility of directing such an officer.

In fact, it seems to be evident that no decree which could be made under this bill would afford the complainants relief from the embarrassments under which they suppose themselves to labor. If we should allow this decree to stand, and the respondents should thereupon at once answer, admitting all the allegations of the bill and joining in the prayers thereof, we could do nothing further, so far as I can see, than to make a decree enjoining the respondents as prayed and discharging the receiver. It would hardly be claimed that the court should retain possession of the property indefinitely for the convenience of the complainants. In justice to the complainants, however, it is right to state that they explained at the argument that they hope, before this bill shall be finally heard, to set on foot or prosecute such measures, whether by litigation or otherwise, as will effectually relieve their present difficulties and enable them, without apprehension of further danger, to discontinue this bill.

The evidence, moreover, is by no means clear that the respondents are doing any injury to the company property. The respondents claim that the personal property of the company being in the hands of a custodian, and the company being, upon proceedings in this court, enjoined from contracting any debt, and by consequence prevented from doing any business, the president of the company has been able to make an agreement with some persons of substance by which he continues the business, keeps the property in good order, and keeps the rates of insurance at the lowest point, retains the operatives in employment at the mills, and pays the profit of the business, if any there be, to the use of the stockholders, without involving them in liability for any losses which may be made. The affidavit of William Sprague to this effect is not contradicted, save by the general allegations of misconduct contained in the bill. If we should retain the receiver in office, and advise him to the best of our ability as to the management of the mills, I could not venture to hope that the condition of the property would be more favorable to the complainants.

I am of opinion, therefore, that the decree should be vacated.

*Order accordingly.*

*Benjamin F. Thurston, Charles Hart, James Tillinghast & C. Frank Parkhurst,* for complainants.

*Benjamin F. Butler, Roger A. Pryor, Jerome B. Kimball & Andrew B. Patton,* for respondents.

NOTE. — The foregoing case was heard by STINESS, TILINGHAST, and CARPENTER, JJ.